NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

AARON L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.L., *Appellees*.

No. 1 CA-JV 18-0363
FILED 6-6-2019

---

Appeal from the Superior Court in Maricopa County
No. JD530222
The Honorable David King Udall, Judge

**AFFIRMED**

---

COUNSEL

Jeffrey M. Zurbriggen PC, Phoenix
By Jeffrey M. Zurbriggen
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**C R U Z**, Judge:

¶1            Aaron L. ("Father") appeals the superior court's order terminating his parental relationship to his child, S.L.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            Father and Kelley L. ("Mother") are the natural parents of S.L., born in June 2015.  The Department of Child Safety ("DCS") became involved with the child after Mother tested positive for methamphetamine at S.L.'s birth.  Mother has mental-health and substance-abuse issues.  DCS was also concerned that Father was abusing substances.  DCS offered the parents services which they engaged in, satisfying DCS's concerns.  S.L. went home from the hospital with Mother and Father.

¶3            In July 2016, Mother stopped taking her medication, causing a psychotic episode in which she attacked Father while he was holding S.L.  Mother was hospitalized and complied with mental-health treatment.  Father told DCS he would not allow Mother unsupervised contact with S.L.  Therefore, DCS initiated an in-home dependency.

¶4            Over the next month, however, Mother did not adhere to her mental-health treatment, failed to submit to a drug test, and was arrested for assaulting Father.  Additionally, Father refused to submit to a drug test and allowed Mother back into the home despite concerns about her mental-health and domestic violence.  DCS took custody of S.L. in mid-August and filed a dependency petition.  Although DCS later referred Father for services, he refused to participate, save for a few visits with S.L.

¶5            The court issued a notice of the preliminary protective hearing, warning Father:

> You should be represented by an attorney at this hearing.  If you cannot afford an attorney, the Court will decide if you qualify financially for a court appointed attorney, and you

might be required to contribute to the cost of your attorney.
A lawyer has been conditionally appointed to represent you,
but you MUST COMPLETE the attached Financial Affidavit
to see if you are eligible for a court-appointed attorney. If you
plan to hire your own attorney at your own expense, he or she
should attend the court conference and hearing with you.

Father then attended the preliminary protective hearing and signed a "Form 1 Notice to Parent in Dependency Action," which further informed him of his legal rights, including "[t]he right to counsel, including court appointed counsel if you are indigent." Despite this, Father never filed a financial affidavit. Instead, Father hired private counsel in August 2016. He stopped attending court hearings after October.

¶6　　　　　In July 2017, the court found S.L. dependent and set a case plan of family reunification, concurrent with severance and adoption. The next month, the court allowed Father's private counsel to withdraw and appointed him new counsel "subject to Father filing" a financial affidavit. Still, Father did not file an affidavit, attend court hearings, or otherwise participate in the case. The court, therefore, relieved his appointed counsel in December 2017.

¶7　　　　　In February 2018, the court changed the case plan to severance and adoption and DCS moved to terminate Father's parental rights under the statutory grounds of abandonment and fifteen-month out-of-home placement. By May, DCS was unable to personally serve Father, so the court allowed DCS to serve him "by [first] class mail with no signature required" and by "posting notice upon [F]ather's believed residence." DCS then sent Father notice through certified mail (which he did not claim) and by posting a notice on the door of his last-known address.

¶8　　　　　Father appeared at the pretrial conference on June 19, 2018. At this hearing, the court found service was incomplete and again ordered DCS to serve Father via first class mail at his last known address. Father told the court he "will be filing a change of address . . . within the next 30 days." The court encouraged him to notify DCS and the court of any address change.

¶9　　　　　The court also informed Father that he had "a right to an attorney, although [appointment] will require a financial affidavit." In fact, an attorney from the Office of Public Defense Services was present, but stated that he was "not appointed on this" matter and "was just asked to step in." The attorney further stated that "Father . . . instructed me not to

speak on his behalf, so it doesn't appear that he's wanting counsel." Likewise, Father told the court, "I really do not want an attorney. If I want one . . . I'll hire a private one."

¶10        At that point, the court warned Father:

> Although you would have an absolute right to represent yourself, I would strongly discourage you from doing that. Let me explain why. As a self-represented party, you are required to comply with all rules. The Court is not permitted to give you any leeway. They do hold you to . . . the same standard as they would an attorney. So I would strongly discourage you from doing that. However, . . . I will permit you to represent yourself or allow you to retain private counsel.

¶11        Finally, the court set the initial termination hearing in Father's presence, allowed him to appear telephonically at that hearing, and provided him the phone number to do so. The court also gave Father a "Form 3" that "set forth [his] rights and . . . responsibilities in this case" and "contain[ed] the dates of the next hearing." At the end of the pretrial conference, the court asked Father, "is there anything that you want to say to the Court today?" And Father responded, "Not today."

¶12        The day after the pretrial conference, DCS mailed, by first class mail, a copy of the termination motion, notice of hearing, and acceptance and waiver to Father's last-known address. Yet, Father did not appear or call into the initial severance hearing. Nor did privately retained counsel appear on his behalf. The court found Father lacked good cause for his absence and proceeded with an evidentiary hearing on the termination motion. Ultimately, the court terminated Father's parental relationship on the grounds alleged. Father appealed the termination order. We have jurisdiction pursuant to the Arizona Constitution Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶13        On appeal, Father contends that (1) DCS failed to properly serve him with the termination motion and (2) the court erred by not appointing him counsel and by finding that he had waived counsel without expressly ascertaining that decision was done knowingly, intelligently, and

4

voluntarily.[1]  We review the trial court's determination that a parent has waived the right to counsel for an abuse of discretion.  *State v. Gunches*, 225 Ariz. 22, 24, ¶ 8 (2010).  However, we review constitutional issues and mixed questions of fact and law *de novo*.  *See In re Andrew C.*, 215 Ariz. 366, 367, ¶ 6 (App. 2007); *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 233, ¶ 8 (App. 2005).

I.      Service of the Termination Motion

**¶14**        The objective of due process is fundamental fairness, and it requires that a party be given reasonable notice and an opportunity to be heard in a meaningful time and a meaningful manner.  *See J.D.S. v. Franks*, 182 Ariz. 81, 95 (1995); *State v. Melendez*, 172 Ariz. 68, 71 (1992); *Pima Cty. Juv. Action No. S-949*, 131 Ariz. 100, 101 (App. 1981).  "The [juvenile] court lacks jurisdiction to enter a judgment adverse to a party when there is a lack of proper service on that party."  *Maricopa Cty. Juv. Action No. JS–5860*, 169 Ariz. 288, 291 (App. 1991).  "Whatever method of service is utilized, it must give notice sufficient to meet the requirements of due process."  *Id.* at 290.  That is, notice must be "reasonably calculated, under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Blair v. Burgener*, 226 Ariz. 213, 219, ¶ 19 (App. 2010).

**¶15**        According to Father, the court erred in finding that DCS had properly served the termination motion by mailing it to his last-known address.  Father argues DCS's service did not conform with Arizona Rules of Civil Procedure ("Rule") 4.1 and 4.2, and "would not effectuate any type of possible notice."  Because DCS moved, rather than petitioned, for termination of Father's relationship, the applicable rule is Ariz. R. Civ. P. 5(c).  *Compare* Ariz. R.P. Juv. Ct. 64(D)(2) (applying Ariz. R. Civ. P. 5(c) to motions for termination) *with* Ariz. R.P. Juv. Ct. 64(D)(3) (applying Ariz. R. Civ. P. 4.1 or 4.2 to petitions for termination).[2]

---

[1]      Father does not challenge the court's finding that he lacked good cause for his absence from the initial termination hearing or the merits of the termination order.

[2]      Father does not challenge service of the dependency petition.  On August 24, 2016, Father personally appeared at the preliminary protective hearing and accepted service of the dependency petition, which initiated these proceedings.  Thus, Father was subject to the court's continuing authority under the ongoing dependency.  *See* A.R.S. § 8-862.

**¶16** "The motion for termination of parental rights and notice of hearing shall be served by the [petitioner] upon the parties . . . pursuant to Rule 5(c), Ariz. R. Civ. P. at least ten days prior to the initial termination hearing." Ariz. R.P. Juv. Ct. 64(D)(2). Arizona Rule of Civil Procedure 5(c) states,

> (2) [a] document is served . . . by any of the following:
>
> > (A) handing it to the person;
>
> > (B) leaving it:
>
> > > (i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or
>
> > > (ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;
>
> > (C) mailing it by U.S. mail to the person's last-known address—in which event service is complete upon mailing. . . .

Here, DCS mailed Father notice more than ten days before the initial termination hearing.

**¶17** Using language from Rule 4.1(k), Father argues that any reason for alternative service dissipated when he personally appeared at the pretrial conference in June 2018 and that he should have been personally served after that time, not served through mail. But DCS complied with Rule 5(c)'s directive to serve Father "under this rule by *any* of the following," including "mailing it by U.S. mail to the person's last-known address." (Emphasis added.) By complying with Rule 5(c), DCS properly served Father under Ariz. R.P. Juv. Ct. 64(D)(2).[3]

---

[3] Father argues that DCS did not include a notice of hearing in the record. DCS's affidavit avowed that the notice of hearing, although not filed in the record, was mailed along with the motion for termination. Ariz. R.P. Juv. Ct. 64(C) ("A notice of hearing shall accompany the motion . . . for

¶18        Finally, the record does not support Father's contention that he lacked actual notice of the initial termination hearing. At the pretrial conference, the court told Father the date and time of the initial termination hearing, authorized him to appear telephonically, gave him the phone number for the hearing, and gave Father an opportunity to ask questions. The court also provided Father with a Form 3, which confirmed the date and time of the hearing and warned him that a failure to appear could result in termination of his parental rights.

¶19        Father claims that DCS was required to conduct an updated diligent search before serving him by mail. Father concedes that he still resided at the address where DCS mailed his notice until he was evicted on June 18, 2018—one day before the pretrial conference that he attended. Two days later DCS mailed notice. Despite this, Father made no mention of his eviction during the hearing. Instead, Father simply told the court "I will be filing a change of address soon . . . [i]n the next 30 days," and the court twice encouraged Father to notify DCS and the court of his new address. Father did not do so.

II.        Right to Counsel

¶20        Father next argues that the superior court erred by not appointing him counsel and that his "counsel was precluded from participating in the termination proceedings."

¶21        Parents have a due process and statutory right to counsel in a severance proceeding. A.R.S. § 8-221(B) ("If a . . . parent . . . is found to be indigent and entitled to counsel, the juvenile court shall appoint an attorney to represent" him.); Ariz. R.P. Juv. Ct. 38(B); *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 260, ¶¶ 14-15 (App. 2003) (due process affords parents in termination matters a right to counsel). Although a parent's right to counsel in a severance proceeding "is not co-extensive with a criminal defendant's right to counsel under the Sixth Amendment," it is still "of constitutional dimension." *Daniel Y.*, 206 Ariz. at 260, ¶¶ 14-15.

¶22        Generally, a parent's waiver of constitutional rights must be done intelligently, knowingly, and voluntarily. *See Manual M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 211, ¶ 20 (App. 2008); *see also State v. Avila*, 127 Ariz. 21, 25 (1980) ("[I]n any proceeding involving the surrender of

---

termination of parental rights and shall advise the parent . . . of the location, date and time of the initial termination hearing.").

Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made. Such condition of mind, moreover, will not be presumed from a silent record."). "[T]he standard for waiver of counsel under [A.R.S. § 8-221(B)] is not different [from] any other constitutional right" and its waiver "is not easily presumed." *Daniel Y.*, 206 Ariz. at 260-61, ¶ 15. Before a parent waives his right to counsel, the superior court must advise him of "the dangers of self-representation, and the difficulties involved in defending oneself without formal legal training." *Id.* at 261, ¶ 15. However, "the absence of an explicit finding of a knowing, intelligent, voluntary waiver of counsel" is not "reversible error where the record as a whole supported a finding of constitutional waiver." *State v. McLemore*, 230 Ariz. 571, 578 n.12, ¶ 23 (App. 2012).

¶23        Here, the record shows that Father was repeatedly notified of his right to appointed counsel, conditioned on his submitting a financial affidavit. He did not complete a financial affidavit, and therefore, never established indigency or a corresponding right to appointed counsel. *See Morger v. Superior Court*, 130 Ariz. 508, 509-10 (App. 1981) (discussing factors for whether a party is indigent and entitled to appointed counsel). Instead, Father unequivocally stated at the pretrial conference that he did not want counsel appointed on his behalf.

¶24        The superior court did not then prevent Father from retaining private counsel or hinder that counsel from effectively participating in the hearing. To be sure, Father hired private counsel in the past and was represented (by both private and appointed counsel) between August 2016 and December 2017. Yet, Father stated, "I really do not want an attorney. If I want [an attorney], I'll . . . hire a private one," and the court replied it would "permit [Father] to represent [himself] or allow [him] to retain private counsel." Father did not hire an attorney afterwards. The court therefore reasonably concluded that Father "wishes to waive representation through counsel in this matter."[4]

¶25        Father argues the court erred by not expressly finding that his decision to waive counsel and represent himself was done knowingly, intelligently, and voluntarily. But the record implicitly supports such a finding. *McLemore*, 230 Ariz. at 578 n.12, ¶ 23. The court warned Father of

---

[4]        Father also asserts that "advisory counsel at a minimum should have been appointed." However, he provides no authority showing Father was entitled to advisory counsel. *Cf.* Ariz. R. Crim. P. 6.1(c) ("After a defendant waives the right to counsel, the court *may* appoint advisory counsel for the defendant at any stage of the proceedings."). (Emphasis added.)

the dangers of self-representation, and "strongly discourage[d]" him from doing so. Father did not hire private counsel, provide the requisite financial affidavit or request court appointed counsel after the court's explanation and warning.

¶26 Moreover, the record shows that Father understood the proceedings and advocated for himself. As a medical doctor, Father is highly educated and knew the seriousness of the proceedings because by the time of the pretrial conference, S.L.'s dependency had been ongoing for almost three years. Father advocated for himself at the pretrial conference by his clear, intelligent, voluntary and repeated refusals of court-appointed counsel. He also informed the court that he had "not been avoiding" service, explaining that he had "freely emailed [DCS's] server a couple times about other issues." When the court ordered DCS to serve Father through the mail, he informed the court that he "will be filing a change of address soon . . . [i]n the next 30 days." When the court set the initial termination hearing, Father stated, "I'm in Yuma, Arizona that day before and the day of in the" emergency room. Because of this, the court explained how Father could appear telephonically, and he replied, "Okay. Thank you."

¶27 Father suggests that the waiver should not be implied because DCS had alleged substance-abuse concerns in the dependency petition and alleged that he failed to participate in substance-abuse testing in the termination motion. However, the record shows that Father was coherent and able to understand the proceedings and respond appropriately to the court. He also consistently denied using illegal substances during the dependency. Finally, the court gave Father a chance to speak at the end of the hearing, but he did not raise any questions or issues.

**CONCLUSION**

¶28 We affirm the superior court's order terminating Father's parental relationship.

