397 P.3d 1057

**TAMMY M., Appellant,**

v.

**DEPARTMENT OF CHILD SAFETY and O.E., Appellees.**

**No. 2 CA-JV 2016-0217**

Court of Appeals of Arizona, Division 2.

Filed May 12, 2017

Tammy M., Ajo, In Propria Persona

Mark Brnovich, Arizona Attorney General, By Cathleen E. Fuller, Assistant Attorney General, Tucson, Counsel for Appellee Department of Child Safety

Presiding Judge Staring authored the opinion of the Court, in which Judge Miller and Judge Espinosa concurred.

## OPINION

STARING, Presiding Judge:

¶1 Tammy M. appeals from the juvenile court's November 2016 order terminating her parental rights to O.E., who was born in December 2014, after submission of the matter on the record. As grounds for termination, the court found Tammy was unable to parent effectively due to a history of chronic substance abuse that was likely to continue for a prolonged, indefinite period, *see* A.R.S. § 8-533(B)(3), and also found she had failed to remedy the circumstances that caused O.E. to be in court-ordered, out-of-home care for longer than fifteen months, *see* § 8-533(B)(8)(c). On appeal, Tammy argues the Department of Child Safety (DCS) failed to establish by clear and convincing evidence that she suffers from chronic, disabling substance abuse. She also maintains her due

process rights were violated when the court, having permitted her attorney to withdraw two days before the severance trial, denied her request for appointed counsel.[1]

¶2 Based on the submitted record, we cannot say Tammy has shown the juvenile court abused its discretion in finding the evidence sufficient to terminate her parental rights. But Tammy maintains, and the record supports, that she consented to a "paper trial" only after the court denied her request for new counsel. Because we conclude the court abused its discretion in denying that request, we reverse the termination order and remand the case for further proceedings.

### Relevant Background

¶3 This dependency proceeding, originally filed in Maricopa County, was transferred to Pima County in April 2015, and the juvenile court appointed Charles Lagattuta to represent Tammy. The following month, Lagattuta moved to withdraw with Tammy's consent, citing her "extreme dissatisfaction" and a resulting conflict "such that further representation would be impossible." Lagattuta requested the appointment of Cynnamon Arizpuru, who had indicated her availability and willingness to represent Tammy. The court granted Lagattuta's request and appointed Arizpuru as substitute counsel.

¶4 In July 2016, DCS filed a motion to terminate Tammy's parental rights. In August, both Arizpuru and counsel for O.E.'s father, Larry E., filed motions to withdraw from representation.[2] In her motion, Arizpuru informed the court that "[t]he Attorney/Client relationship has disintegrated to a point that it is not salvageable," that she believed Tammy "wishes to represent herself in further proceedings," and that appointment of either advisory counsel or a guardian ad litem would be appropriate.

¶5 According to a minute entry for the hearing held on August 11, 2016, the next scheduled hearing, the juvenile court noted

---

1. To the extent Tammy challenges it, we lack jurisdiction to review the juvenile court's March 2016 order approving DCS's removal of O.E. from kinship care. That order was final and appealable, *see Lindsey M. v. Ariz. Dep't of Econ. Sec.*, 212 Ariz. 43, ¶9, 127 P.3d 59, 61–62 (App.

2006), and the time to seek appellate review has passed. *See* Ariz. R.P. Juv. Ct. 104(A) (appeal must be filed within fifteen days of final order).

2. Larry E.'s parental rights to O.E. have also been terminated. He is not a party to this appeal.

Arizpuru's statement that Tammy had "indicated her wish to represent herself," questioned both parents, and granted both motions to withdraw, appointing Kasey Coughlin as Tammy's new attorney.[3] In September, the juvenile court scheduled October 26 as the first day of a contested severance trial, stating the set trial dates were "firm" and would not be continued "absent extraordinary circumstances either unforeseen or unavoidable."

¶ 6 On October 13, Coughlin filed a "Motion to be Relieved as Counsel for Mother and Possibly Serve as Advisory Counsel," asking that she be withdrawn as counsel of record for Tammy. In her motion, she stated her communication with Tammy had broken down to the point that she could "no longer effectively represent" her. She expressed her belief, as had Arizpuru, that Tammy wished to represent herself at the contested severance trial. She did not know if Tammy would want her to serve in an advisory role, but she expressed her willingness to do so.

¶ 7 Tammy did not appear at the October 24 motion hearing, and the juvenile court found no good cause for her absence and granted Coughlin's motion to withdraw. But it directed that Coughlin remain as advisory counsel, ordering her to make good faith efforts to assist Tammy in preparing for trial. The court further ordered Coughlin to "make good faith efforts to continue acting as counsel and trial counsel" if Tammy asked her to do so.

¶ 8 Two days later, on the first day of the scheduled severance trial, Tammy asked the juvenile court to appoint counsel and to continue the trial to afford her new attorney time to prepare. When questioned about her request, Tammy said she understood her personality "may be strong," but she wanted an attorney who would "listen to [her] and proceed the way [she] ask[ed] them to," in light of the serious consequences at stake. The court sought to clarify that she was asking for additional time because she wanted another attorney, and Tammy responded, "Yes. Yes, please. And I don't need a lot of time. I just would like somebody to help me.

Because I am not a lawyer, I don't know how to do any of this stuff."

¶ 9 Larry E. joined Tammy's motion, and counsel for O.E. took no position. DCS objected to a continuance, maintaining the circumstances were not "unforeseen" and reminding the court that in August, when moving to withdraw, Arizpuru had stated her belief that Tammy wished to represent herself. Although DCS objected to continuing the trial, it took no position on Tammy's request for appointment of counsel.

¶ 10 The juvenile court denied Tammy's oral motion and request for counsel, finding she had not presented the "extraordinary circumstances" required for a trial continuance. The court stated it had reviewed portions of the record and had "listened to the admonitions or the warnings I gave [Tammy] about the need to be prepared for trial, the need to cooperate with her attorneys." The court noted that Tammy had been appointed three attorneys and that, although it had granted Coughlin's motion to withdraw, it had "ordered [her] to stay on as advisory counsel" and "to be prepared, as best as possible, to step in and take over" if Tammy so requested.

¶ 11 After the juvenile court denied her motion for a continuance and request for counsel, Tammy agreed to submit the matter based on the record and exhibits, in lieu of live testimony. In an under advisement ruling, the court found DCS had proven grounds for termination under § 8–533(B)(3) and (B)(8)(c), as alleged in its motion, and had also proven that severance was in O.E.'s best interests.

¶ 12 We subsequently appointed Richard Beck to represent Tammy on appeal. On December 28, after a record review and consultation with his client, Beck filed a motion asking to be relieved of further responsibility in this case because he could find "no non-frivolous issue on which to base an appeal." He also noted Tammy "strongly disagree[d]" with his assessment of the case and wanted to represent herself on appeal. We permitted

---

**3.** The transcript of this proceeding is not part of the record on appeal.

Beck to withdraw and Tammy was allowed to proceed pro se.[4]

## Discussion

■ ¶ 13 We review a court's denial of a request for new counsel for an abuse of discretion. *See State v. Moore*, 222 Ariz. 1, ¶ 77, 213 P.3d 150, 164 (2009). But we review constitutional issues and purely legal issues de novo. *Id.* ¶ 51. Tammy contends she was denied due process when the juvenile court denied her request for appointed counsel after it had permitted Coughlin to withdraw two days before the scheduled severance trial. We agree.

■ ¶ 14 An indigent parent in a proceeding to terminate parental rights has a right to appointed counsel afforded by statute, A.R.S. § 8–221, by rule, Ariz. R. P. Juv. Ct. 38(B), and as a matter of due process, *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, ¶ 14, 77 P.3d 55, 58 (App. 2003) ("constitutional dimension" of right to counsel in severance). DCS does not dispute Tammy was indigent and therefore entitled to appointed counsel. Instead, it argues there was no denial of Tammy's right to counsel because she was "represented" by advisory counsel—Coughlin—"who was to assist her and be prepared to step in if [Tammy] needed her to." In the alternative, DCS argues Tammy waived her right to counsel.

¶ 15 In *Daniel Y.*, we concluded the juvenile court erred in terminating a father's parental rights without providing appointed counsel when the father "made no unequivocal request to represent himself and did not knowingly or voluntarily waive, or otherwise forfeit, his right to counsel." 206 Ariz. 257, ¶ 26, 77 P.3d at 61. As in this proceeding, the juvenile court in *Daniel Y.* had already permitted two attorneys to withdraw based on allegations of "strategic" or "irreconcilable" differences when, two weeks before the severance trial, Daniel's most-recently appointed attorney moved to withdraw based on irreconcilable differences. *Id.* ¶¶ 5–6. The court granted counsel's request to withdraw after an ex parte, in camera hearing and declined

to appoint substitute counsel. *Id.* ¶ 6. It referred to an earlier minute entry in which it had cautioned that it "would find it very difficult to grant any other motion to withdraw filed by an attorney or request for a new attorney filed by" Daniel. *Id.* At the severance trial, when the court asked whether he was ready to proceed, Daniel responded that, without counsel, he did not know how to answer the question. *Id.* ¶ 7. The court nevertheless proceeded with the hearing and terminated his parental rights. *Id.* ¶¶ 7, 10.

■ ¶ 16 Drawing on criminal cases involving the right to counsel, in particular *State v. Moody*, 192 Ariz. 505, 968 P.2d 578 (1998), and *State v. Henry*, 189 Ariz. 542, 944 P.2d 57 (1997), the *Daniel Y.* court observed that the waiver of the right to counsel cannot be "easily presumed." 206 Ariz. 257, ¶¶ 15–21, 77 P.3d at 58–60. As in "any proceeding involving the surrender of Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made … [and waiver] will not be presumed from a silent record." *Id.* ¶ 18, *quoting State v. Avila*, 127 Ariz. 21, 25, 617 P.2d 1137, 1141 (1980). Thus, before the juvenile court could find Tammy had waived her right to counsel, Arizona law required that she be advised of "the dangers of self-representation, and the difficulties involved in defending oneself without formal legal training." *Id.* ¶ 15, *quoting State v. Djerf*, 191 Ariz. 583, ¶ 23, 959 P.2d 1274, 1282 (1998).

■ ¶ 17 In addition, although "persistent disruptive or dilatory conduct" may support a determination that the right to counsel has been waived, "[s]uch a waiver by conduct can occur only after a court both warns the [party] that further disruptive conduct may result in the loss of the right to counsel and explains the implications of such a waiver." *State v. Hampton*, 208 Ariz. 241, ¶ 7, 92 P.3d 871, 874 (2004), *citing Daniel Y.*, 206 Ariz. 257, ¶¶ 15–17, 77 P.3d at 58–59. Thus, where it appears a party may have an unavoidable, recurring conflict with any attorney—for ex-

---

4. In contrast to counsel's stated inability to identify a non-frivolous issue, Tammy filed a detailed opening brief that accurately presented the due process issue and some of the supporting case law we discuss herein.

ample, because he insists on an impermissible defense—a trial court must make "very clear" that if "another irreconcilable conflict develops as a result," he "will have to choose between his [presently assigned] lawyer or self-representation." *Moody*, 192 Ariz. 505, ¶ 26, 968 P.2d at 582 (Martone, J., concurring), *cited with approval in Daniel Y.*, 206 Ariz. 257, ¶ 17, 77 P.3d at 59.

¶ 18 In *Daniel Y.*, we noted the supreme court's approval of the choice afforded in *Henry*, requiring a defendant to "either keep his current counsel, with whom he had no real irreconcilable conflict, or elect to represent himself" by making "an unequivocal request to do so." *Daniel Y.*, 206 Ariz. 257, ¶ 21, 77 P.3d at 60, *citing Henry*, 189 Ariz. at 546–48, 944 P.2d at 61–63. In *Henry*, the defendant had moved for substitute counsel alleging an "irreconcilable conflict." *Henry*, 189 Ariz. at 546, 944 P.2d at 61. The trial court found no such conflict, declined to appoint substitute counsel and offered Henry a choice "between keeping his attorney and representing himself." *Id.* When Henry refused to make a choice between these alternatives, the court proceeded with the hearing, with Henry represented by existing counsel. *Id.*

¶ 19 The *Henry* court affirmed the trial court's denial of the motion for substitute counsel, finding "ample evidence" that the " 'conflict' " described by Henry "amounted to nothing more than a disagreement over appropriate defense strategies." *Id.* at 547, 944 P.2d at 62. It also rejected his alternative claim that the court had denied his right of self-representation. *Id.* at 548, 944 P.2d at 63. The court explained, "In order to successfully invoke this right, ... the accused must make an unequivocal request to represent himself," and it found Henry had failed to do so. *Id.*

¶ 20 In *Daniel Y.*, we also recognized the *Henry* court "did not hold ... that the trial court could allow existing counsel to withdraw and require the defendant to proceed unrepresented without providing the defendant with advance warning." *Daniel Y.*, 206

Ariz. 257, ¶ 21, 77 P.3d at 60. Here, as in *Daniel Y.*, we see no evidence in the record that Tammy voluntarily waived her right to counsel, was warned of the dangers of self-representation, or was advised that, if Coughlin moved to withdraw, she might be required to choose between Coughlin and self-representation.

¶ 21 DCS argues the juvenile court effectively afforded Tammy the choice of continuing with Coughlin, by ordering Coughlin to be prepared to resume her representation at Tammy's request. However, because the court granted Coughlin's motion to withdraw based on her assertion she could "no longer effectively represent" Tammy, Coughlin's further representation of Tammy would be inconsistent with due process. It is "constitutionally impermissible" to require a party entitled to counsel to choose between self-representation and "representation by a lawyer with whom [s]he had a completely fractured relationship, clearly an 'irreconcilable conflict.' " *Moody*, 192 Ariz. 505, ¶ 23, 968 P.2d at 582; *see also State v. Cromwell*, 211 Ariz. 181, ¶ 29, 119 P.3d 448, 453 (2005) ("irreconcilable conflict" or "completely fractured" attorney-client relationship "ordinarily requires the appointment of new counsel"). Thus, the court's order permitting Coughlin to withdraw was inconsistent with its order that she be available to resume representation of Tammy if requested.[5]

¶ 22 DCS next argues that even if Tammy was not afforded counsel consistent with due process, she had "knowingly, voluntarily, and intelligently" waived that right. In support, it maintains she "prepare[d] and file[d] pleadings on her own behalf and repeatedly assert[ed] that she wished to represent herself." But the pro se pleadings DCS identifies were submitted to the court only after Coughlin was permitted to withdraw, not before. Further, although the record shows two withdrawing counsel had stated they believed Tammy wished to represent herself, nothing in the record suggests Tammy ever made such a request of the court, either orally or

**5.** The record before us, including the appointment of three attorneys in the juvenile court, more than suggests Tammy is a challenging client. However, the fact it may be difficult to work with Tammy neither diminishes her right to due process nor permits us to infer that she would be unable to work with some other attorney.

in writing, or that she persisted in that request after being advised of the dangers of self-representation. Her request for appointment of counsel made at the severance trial suggests otherwise. *Cf. State v. Russell*, 175 Ariz. 529, 532–33, 858 P.2d 674, 677–78 (App. 1993) (court's failure to expressly find knowing and voluntary waiver excused where record included defendant's early, articulate pro se motion for self-representation, signed waiver of counsel form, and evidence of knowledge of legal proceedings and therefore supported implicit finding).

¶ 23 DCS also maintains Tammy waived her right to counsel by her conduct, citing the juvenile court's reference to its earlier admonitions "about the need to be prepared for trial, the need to cooperate with her attorneys," along with the court's notice that trial dates would not be continued absent extraordinary circumstances. We disagree with the assertion that such general warnings constituted "advance notice that [Tammy's] motion for a fourth attorney would not be entertained at that late date and that she would need to maintain the relationship with her current attorney or proceed unrepresented." In *Daniel Y.*, we found more specific warnings insufficient to effect a voluntary and intelligent waiver of counsel. *See Daniel Y.*, 206 Ariz. 257, ¶¶ 22–23, 77 P.3d at 60 (court's statement that it would "find it very difficult to grant any other motion to withdraw filed by an attorney or request for a new attorney filed by [Daniel]" insufficient warning that "a repeated instance of irreconcilable conflict would cause him to choose between counsel and self-representation"). And, as already explained, the court failed to offer Tammy a constitutionally permissible alternative to self-representation after granting Coughlin's motion to withdraw.[6] *See Moody*, 192 Ariz. 505, ¶ 23, 968 P.2d at 582.

¶ 24 Likewise, *Baker v. Baker*, 183 Ariz. 70, 73, 900 P.2d 764, 767 (App. 1995), does not support DCS's contention that we must presume the omitted transcript from the Au-

gust 2016 motion to withdraw hearing supports the court's "implicit finding" that Tammy had been warned about the consequences of representing herself. Even if we presume Tammy was warned, it would not alter our analysis because the juvenile court did not offer Tammy the choice between self-representation and denying the motion to withdraw; rather, it permitted Coughlin's withdrawal without permitting response. *See Daniel Y.*, 206 Ariz. 257, ¶ 22, 77 P.3d at 60 (noting Daniel "would have been represented by counsel at the severance hearing" had he been given the choice to remain with counsel before counsel was permitted to withdraw).

### Disposition

¶ 25 For the foregoing reasons, we reverse the juvenile court's termination order and remand the case for further proceedings.

---

6. When these matters were heard, Rule 39, Ariz. R.P. Juv. Ct., provided courts with little guidance with respect to motions to withdraw filed by attorneys in termination proceedings. *See* 198 Ariz. CLXXV (2000). That rule has been amend-ed, effective January 1, 2017, and now provides specific requirements for motions to withdraw or to substitute counsel filed after a trial date has been set. Ariz. R.P. Juv. Ct. 39(C).