NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SARAH P., MICHAEL M., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, V.B., *Appellees*.

No. 1 CA-JV 21-0091
FILED 2-10-2022

Appeal from the Superior Court in Maricopa County
Nos.  JD532752
JS519644
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Jeffrey M. Zurbriggen PC, Phoenix
By Jeffrey M. Zurbriggen
*Counsel for Appellant Sarah P.*

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant Michael M.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

Arizona Attorney General's Office, Phoenix
By Rebeca H. Moskowitz
*Counsel for Appellee V.B.*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Vice Chief Judge David B. Gass joined.

---

**P A T O N**, Judge:

¶1        Sarah P. ("Mother") and Michael M. ("Father") (collectively "Parents") appeal the superior court's order terminating their parental rights to V.B.[1]  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        V.B. was born substance-exposed to methamphetamine ("meth") in August 2019.  Mother tested positive for meth while pregnant with V.B. in July and August 2019 and admitted both to using it and only taking "minimal" measures to stop while pregnant.  At the time of V.B.'s birth, Mother was homeless and Father was incarcerated on criminal trespass charges.

¶3        Father also struggled with substance abuse.  He used an "eight ball" of drugs every two days leading up to his incarceration and relapsed following his release. He had prior arrests for dangerous drug possession and a history of domestic violence, resulting in Mother obtaining an order of protection against him.

¶4        The Department of Child Safety ("DCS") removed V.B. and filed a dependency petition in August 2019.  In November 2019, the superior court adjudicated V.B. dependent and ordered family reunification services.  DCS offered numerous services to Parents, including substance abuse testing and treatment, transportation, a parent aide, a

---

[1] We use initials to protect the privacy of the child.

2

psychological evaluation, parenting classes, counseling, and supervised visitation.

¶5            Mother inconsistently participated in services and could not maintain sobriety throughout the dependency. She tested positive for meth twenty-one times between August and October 2019. She tested negative for drugs from mid-November 2019 until early February 2020, when she tested positive for morphine not prescribed to her. Mother said she stopped testing in March 2020 because of COVID-19. Mother later resumed testing and tested positive for meth in June 2020. In November 2020, she began sporadically testing with a private company because she had relapsed and wanted to "avoid" the hair follicle test required by Physician Services, Inc. ("PSI").

¶6            Mother participated in outpatient drug treatment for about a month and completed a few days of inpatient treatment before leaving in November 2020. According to Mother, she left treatment because her mother called and said her brother was in the hospital. It was later determined that this report was untrue. Mother, however, did not return to treatment and was closed out unsuccessfully. After DCS referred her for treatment again in January 2020, she failed to attend consistently and was untruthful about her sobriety, failing to disclose multiple relapses during that period. Mother completed intensive outpatient treatment in September 2020 but relapsed in November and December. Mother did not disclose the November 2020 relapse for two months. Mother testified that her last meth use was on December 30, 2020. Mother attended about half of her group sessions in January 2021.

¶7            After a psychological evaluation, Mother was diagnosed with (1) stimulant use disorder-amphetamine type, moderate, (2) alcohol use disorder, severe, in sustained remission, (3) child neglect, and (4) past personal history of spouse or partner physical violence. Mother's prognosis for safely parenting in the foreseeable future was deemed "fair," but she would need to complete outpatient substance abuse treatment and demonstrate sobriety by being "100% compliant" with drug testing for one year. Mother told the psychologist she had been sober since November 2019 but failed to disclose her positive morphine test in February 2020. To her credit, Mother participated in and completed the parent aide services, numerous parenting classes, counseling, and regularly participated in supervised visitations.

¶8            Father's participation in services was "[m]inimal at best." DCS referred Father to drug testing after his release from incarceration.

Father tested positive for meth and cocaine in December 2019. After breaking his fibula and dislocating his foot, Father received prescriptions for oxycodone, Percocet, hydrocodone, and Vicodin, but a different physician prescribed each medication. He stopped participating in drug testing in February 2020.

¶9            DCS referred Father to substance abuse treatment in November 2019 and he completed intake in December 2019. Father accepted standard outpatient care but failed to participate regularly and closed out unsuccessfully in March 2020. In October 2020, DCS referred Father for a second substance abuse treatment program but Father did not show up and again closed out unsuccessfully. Father claimed he engaged inpatient treatment in Tucson but failed to provide any information about his alleged treatment and admitted to leaving shortly after entering. At the time of the February 2021 trial, Father had been participating in narcotics anonymous meetings for one and a half months.

¶10           Father's parent aide assignment closed out unsuccessfully in March 2020 due to lack of participation. He missed half of his visitations in April 2020, and did not engage in visits between July 24, 2020 and November 14, 2020. He would go missing for extended periods of time.

¶11           In July 2020, DCS moved to terminate Parents' parental rights under the substance abuse ground in A.R.S. § 8-533(B)(3) and the six-month out-of-home placement ground in A.R.S. § 8-533(B)(8)(b). DCS subsequently amended its motion to add the fifteen-month out-of-home placement ground in A.R.S. § 8-533(B)(8)(c).

¶12           On the first day of trial in February 2021, Mother's counsel informed the court that Mother wanted to represent herself. Mother's counsel told the court that he had "numerous conversations with [Mother] over the last couple weeks" regarding her self-representation and believed she was aware of the risks. After asking Mother relevant questions, the court granted Mother's motion to represent herself and appointed her attorney as advisory counsel. On the State's motion, the court conducted a colloquy and found that Mother knowingly, intelligently, and voluntarily waived her right to counsel.

¶13           Mother then asked for a continuance, saying she needed time to address evidentiary issues such as missing notes and her parent aide discharge summary. DCS responded that it had disclosed the parent aide discharge summary and made periodic disclosures of the other materials. Mother also argued that DCS had not considered another family

4

member as a placement. The court denied Mother's request, finding the request untimely, that adequate disclosures had been made, Mother was not prejudiced, and the placement issue was irrelevant to the termination proceeding and could be considered after the hearing.

¶14 Father's counsel also requested a continuance because he was unaware Father would participate in the trial and therefore did not have time to adequately prepare. DCS had served Father by publication and did not have contact with Father before the trial. The court denied the request. Father failed to appear for the second day of trial.

¶15 The superior court terminated Parents' parental rights under the prolonged substance abuse ground in A.R.S. § 8-533(B)(3), and the fifteen-month out-of-home placement ground in A.R.S. § 8-533(B)(8)(c). The court also terminated Father's rights based on the six-month out-of-home placement ground due to his failure to engage in services consistently. The court did not, however, terminate Mother's rights on that ground because Mother participated in services despite her struggles with substance abuse throughout the case.

¶16 The court also determined termination was in V.B.'s best interests. The court noted V.B. was placed with a foster family and that, in accordance with A.R.S. § 8-538(C), placement with family was not possible because DCS determined that no family member would be a willing and appropriate placement for V.B.

¶17 Mother and Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶18 Parents' rights to raise their children as they see fit is fundamental, but not absolute. *Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001). To terminate parental rights, the court must find (1) by clear and convincing evidence one of the statutory grounds under A.R.S. § 8-533(B) and (2) by a preponderance of the evidence that termination is in the best interests of the child. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 41 (2005); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). "The [superior] court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002). As such, if the court's factual findings are supported by reasonable

evidence, we will affirm its termination order unless such findings are clearly erroneous. *Minh T.*, 202 Ariz. at 79, ¶ 9.

**¶19** Mother argues that: (1) she did not knowingly, intelligently, and voluntarily waive her right to counsel, (2) the superior court abused its discretion in denying her motion to continue the trial, (3) reasonable evidence did not support the superior court's order terminating her parental rights under the prolonged substance abuse ground or the fifteen-month out-of-home placement ground, (4) DCS failed to provide diligent reunification efforts, and (5) severance was not in V.B.'s best interests.

**¶20** Father argues that: (1) reasonable evidence did not support the superior court's order terminating his parental rights under the prolonged substance abuse ground, the six-month out-of-home placement ground, or the fifteen-month out-of-home placement ground, and (2) severance was not in V.B.'s best interests.

## I. Mother knowingly, intelligently, and voluntarily waived her right to counsel.

**¶21** We review the superior court's finding regarding a parent's knowing, intelligent, and voluntary waiver of the right to counsel for an abuse of discretion. *State v. Gunches*, 225 Ariz. 22, 24, ¶ 8 (2010). Before finding that a parent has waived the right to counsel, the superior court must explain "the dangers of self-representation, and the difficulties involved in defending oneself without formal legal training." *Tammy M. v. Dep't of Child Safety*, 242 Ariz. 457, 461, ¶ 16 (2017) (citation and internal quotation marks omitted).

**¶22** Mother asserts that she "relented" to self-representation because she did not unequivocally ask to represent herself and the request was made at her counsel's behest. She also argues the superior court failed to conduct a sufficient colloquy to determine if the waiver was knowing, intelligent, and voluntary.

**¶23** We disagree. Mother's counsel initially indicated that Mother desired to represent herself, stating the two of them had "numerous conversations" regarding her self-representation. Thereafter, the court allowed Mother to give her "spiel" on why she desired to represent herself. Mother informed the court she wanted to represent herself because "nobody knows my case better than I do" and "it would be nice to be able to have a voice because at no point during this process, have I been able to defend myself at all. And I feel like, you know, now's my time to get to do that." These statements do not support Mother's contention that she merely

"relented" to self-representation. Indeed, Mother said she was grateful for her attorney's guidance throughout the process and permitted him to stay on as advisory counsel.

¶24 Additionally, the court provided Mother a sufficient colloquy. The court specifically asked Mother if she (1) understood she would have the ability to testify even if she did not represent herself, (2) had taken any drugs, alcohol, or medication in the last twenty-four hours, (3) felt it would be helpful to have the guidance of a lawyer "especially at this late and very important stage," (4) understood she would be held to the same standard as an attorney, (5) knew she had a right to an appointed attorney, and (6) understood the interests at stake and the ramifications of the proceeding going negatively. The court asked the State whether there were any mental health allegations regarding Mother, to which counsel for the State responded that there were not. The record was not "silent" on the waiver issue and contained diligent probing of Mother's request. *See id.* (citation omitted). As such, the superior court did not err in finding that Mother knowingly, intelligently, and voluntarily waived her right to counsel.

## II. The superior court did not abuse its discretion in denying Mother's motion to continue the trial.

¶25 Mother asserts the superior court abused its discretion in denying her continuance motion as untimely. DCS argues Mother waived this argument because she failed to develop it. Notwithstanding waiver, the record supports the superior court's decision to deny the motion.

¶26 We review the denial of a motion to continue for an abuse of discretion and prejudice to the defendant. *State v. Forde*, 233 Ariz. 543, 555, ¶ 18 (2014) (citation omitted); *Quayle v. State*, 19 Ariz. 91, 96 (1917) ("The granting of a postponement of the trial is a matter within the sound legal discretion of the trial court, and . . . the [ruling] made will not be disturbed by an appellate court unless it is made to appear that such discretion has been abused, to the defendant's prejudice."). "There is no abuse of discretion in denying a motion to continue when the record reflects that the defendant failed to exercise due diligence in preparing for trial." *State v. Barr*, 217 Ariz. 445, 448, ¶ 10 (App. 2008) (citation omitted). Generally, a continuance will be denied if it is for want of preparation unless a party demonstrates a "precise legal or strong equitable reason" for a lack of preparation and reasonably diligent effort to prepare. *State v. Hendricks*, 66 Ariz. 235, 238 (1947) (citation and internal quotation marks omitted).

¶27 Mother asserts the superior court erred in denying her motion because she was unprepared and "could not have possibly asked for a continuance any earlier." She claims that denying the motion "exacerbated the negative impact of having no effective assistance of counsel prior to trial."

¶28 Mother's argument that she could not have requested a continuance earlier is not supported by the record, as Mother's attorney indicated that discussions regarding her self-representation had been occurring for "the last couple weeks." Given these earlier discussions, Mother should not have waited until the day of trial to request a continuance, especially if she knew she wanted to represent herself weeks prior, as stated by her attorney. The superior court acted within its discretion in denying Mother's motion to continue the trial.

¶29 Mother's argument that she did not receive the necessary disclosures to proceed also fails because the parties had been regularly disclosing documents before the trial, and documents—including Mother's exhibits—had been marked and admitted into evidence. Specifically, the parent aide discharge summary and visitation notes she claimed she did not have had been disclosed and were included in the record.

¶30 Finally, Mother claims technical interruptions hindered her ability to develop her arguments fully at trial. Although the transcript reflects an "indiscernible" notation over thirty times during Mother's cross-examination of the DCS case manager, it also reflects Mother repeated her questions and received complete responses. Accordingly, we find no error.

### III. The superior court did not abuse its discretion in terminating Parents' parental rights pursuant to the statutory grounds.

¶31 "[W]e accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016) (citing *Michael J.*, 196 Ariz. at 250, ¶ 20). "To terminate parental rights pursuant to A.R.S. § 8-533(B) . . . a juvenile court must find by clear and convincing evidence that [(1)] a statutory ground for termination exists and [(2)] that the agency responsible for the care of the child has made a diligent effort to provide appropriate reunification services." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 329, ¶ 18 (App. 2007) (citation and internal quotation marks omitted). Additionally, "[t]he court must also find by a preponderance of the evidence that termination is in the child's best interests." *Id.* at 329, ¶ 18 (citing A.R.S. § 8-533(B)).

¶32 If we find one ground for severance, "we need not consider whether the trial court's findings justified severance on the other grounds announced by the court." *Michael J.*, 196 Ariz. at 251, ¶ 27. Nevertheless, we consider the statutory grounds for termination raised on appeal by Mother and Father in turn.

### a. Prolonged substance abuse ground.

¶33 The superior court may terminate a parent-child relationship under the prolonged substance abuse ground if: "[1] the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and [2] there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-544(B)(3).

¶34 "[T]he term 'parental responsibilities' . . . [refers] to those duties or obligations which a parent has with regard to [their] child." *Maricopa Cnty. Juv. Action No. JS-5894*, 145 Ariz. 405, 408 (App. 1985) (citation and internal quotation marks omitted). Specifically, "[t]he term is not intended to encompass any exclusive set of factors but rather to establish a standard which permits a trial judge flexibility in considering the unique circumstances of each termination case." *Id.* at 409.

¶35 "[D]rug abuse need not be constant to be considered chronic." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). A parent's temporary sobriety does not outweigh a substantial history of abuse. *Id.* at 379, ¶ 29. "It is not the number of times that [parent] has tested positive or negative for drug abuse that is key, but rather, it is the fact that [they have] consistently failed to *abstain* from drugs and alcohol." *Id.*

¶36 "[A parent's] failure to remedy [their] drug abuse; despite knowing the loss of [their child] was imminent, is evidence [they have] not overcome [their] dependence on drugs and alcohol." *Id.* A child's interest in permanency must take precedence over a parent's struggle with drugs. *Id.* (citation and internal quotation marks omitted). In determining a future ability to parent, the superior court considers "the length and frequency of [parent's] substance abuse, the types of substances abused, behaviors associated with the substance abuse, prior efforts to maintain sobriety, and prior relapses." *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 20 (App. 2016).

### i.  Mother's prolonged substance abuse.

¶37        Mother argues there was no evidence to suggest that substance abuse hindered her ability to parent.  The record, however, contains substantial evidence of Mother's prolonged and consistent failure to abstain from drug use.  V.B. was born substance-exposed to meth, and Mother admitted her drug use led to her being in dangerous situations, including spending time at "trap houses" while pregnant.  Mother continued to use meth throughout the dependency proceeding.  Dr. Jones testified that Mother's failure to maintain sobriety for one year indicates she would struggle to maintain long-term sobriety.  Mother's longest period of sobriety from the dependency adjudication until the severance trial (approximately fifteen months) was seventy-five days.

¶38        At trial, Mother conceded she "will always have a problem with drugs."  She relapsed on numerous occasions during the dependency, including thirty-four days before trial, and was not truthful in disclosing relapses on three separate occasions.  Mother was inconsistent with drug testing and admitted to seeking out a private testing company to avoid the hair follicle test.  Mother's participation in substance abuse treatment services was also unsuccessful.  Given this evidence, the record supports the superior court's findings concerning Mother's prolonged substance abuse.

### ii.  Father's prolonged substance abuse.

¶39        Father argues DCS failed to establish he was a substance abuser incapable of being V.B.'s parent, but the evidence indicates otherwise.  Father began abusing meth at the age of seventeen and was previously arrested more than once for dangerous drug possession.  He failed to consistently drug test throughout the dependency and admitted to abusing substances approximately two months before the severance trial.  Dr. Jones testified that recent drug use suggests concerns regarding long-term sobriety.  Father's last drug test was in February 2020 and he did not complete a substance abuse treatment program.  As such, substantial evidence supports the superior court's finding.

### b.  Six-month out-of-home placement ground as to Father.

¶40        The superior court may terminate a parent-child relationship pursuant to the six-month out-of-home placement ground if:

> [1] [t]he child who is under three years of age has been in an out-of-home placement for a cumulative total period of six months or

longer pursuant to a court order[2] and [2] the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, including refusal to participate in reunification services offered by the department.

A.R.S. § 8-544(B)(8)(b). "Circumstances" means "those circumstances existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *Marina P.*, 214 Ariz. at 330, ¶ 22 (citation and internal quotation marks omitted).

**¶41** Father argues he did not substantially neglect or willfully refuse to remedy the circumstances leading to the out-of-home placement. He claims his engagement in services was negatively impacted by the COVID-19 pandemic because he is immunocompromised but concedes his immune system improved enough to participate in services.

**¶42** Father, however, would "disappear" for months at a time, going "MIA for long periods of time, and then just pop up and email asking for a visit." *See Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994) ("[W]hen a party . . . disappears for months at a time and makes only sporadic, aborted attempts to remedy [their] addiction . . . a trial court is well within its discretion in finding substantial neglect and terminating parental rights on that basis."). As previously discussed, his participation in services was "[m]inimal at best," and he failed to participate consistently in drug testing, substance abuse treatment, parent aide services, and visitations. Though Father testified that he would have drug tested if he had reliable transportation, DCS provided him a bus pass and offered to send him a cab. Father conceded at trial that he knew he had not been there for V.B. and had not been participating in services. He failed to show up for the second day of trial. Thus, the superior court did not abuse its discretion in terminating Father's parental rights.

### c. Fifteen-month out-of-home placement ground.

**¶43** In addition to the other statutory requirements, the superior court may terminate a parent-child relationship pursuant to the fifteen-month out-of-home placement ground if:

[1] [t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or

---

[2] Because this requirement has not been challenged on appeal, we assume its accuracy is conceded. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960).

voluntary placement pursuant to Section 8-806,[3] [2] the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and [3] there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future.

A.R.S. § 8-533(B)(8)(c). The circumstances referred to are "those circumstances existing at the time of the severance that prevented a parent from being able to appropriately provide for his or her children." *Marina P.*, 214 Ariz. at 330, ¶ 22 (citation and internal quotation marks omitted).

¶44 While the six-month ground requires the court to determine whether the parent has "substantially neglected or willfully refused to remedy the circumstances which caused the child to be in an out-of-home placement," no such requirement is imposed on the fifteen-month ground.[4] *Compare* A.R.S. § 8-533(B)(8)(a)-(b) *with* (c); *see Marina P.*, 214 Ariz. at 329, ¶ 21 ("If the moving party cannot establish that the parent substantially neglected or willfully refused to cure the circumstances . . . it cannot obtain severance until the child has been in an out-of-home placement for at least fifteen months.").

### i. Fifteen-month ground as to Mother.

¶45 Mother concedes V.B. has been in an out-of-home placement for fifteen months but argues the time frame did not allow her sufficient time to remedy her circumstances and that she "needed just a bit more time." She claims she made a good faith effort to comply with the case plan and that her circumstances improved because she obtained employment and housing. She also argues the superior court erred in finding there was a substantial likelihood that she would be incapable of exercising proper parental care and control in the near future.

¶46 The statutory requirements for the fifteen-month ground, however, do not provide a basis for a parent to have more time to meet the

---

[3] The requirement that the child be in an out-of-home placement for fifteen months or longer has not been challenged on appeal; thus, we assume its accuracy is conceded. *See Britz*, 87 Ariz. at 388.

[4] Mother argues there was insufficient evidence to prove she substantially neglected or willfully refused to participate or failed to remedy the circumstances. Mother's argument confuses the statutory grounds. *Compare* A.R.S. § 8-533(B)(8)(a)-(b) *with* (c).

requirements for reunification. *See* A.R.S. § 8-533(B)(8)(c). While the record indicates Mother made repeated efforts to engage in services, it also shows she was unable to remedy the circumstances causing V.B. to be in an out-of-home placement. Specifically, her substance abuse issues continued, as illustrated by her twenty-two positive tests for meth during the dependency and her admission to using meth thirty-four days before trial. Mother's repeated dishonesty regarding her relapses and inability to maintain sobriety for a prolonged period emphasize this point.

¶47        The evidence showed Mother's efforts to overcome her drug addiction, while persistent, were unsuccessful and would hinder her ability to exercise proper parental care and control in the near future. We find the superior court did not err in its findings as to this ground.

### ii.    Fifteen-month ground as to Father.

¶48        Father argues that the fifteen-month out-of-home placement ground requires only that the parent remedy the circumstances, which he claims he did, and that DCS failed to prove the other elements of this ground. He recently obtained employment and housing, which is commendable, but does not overcome the substantial evidence supporting the superior court's findings on this ground.

¶49        Father was abusing substances throughout the dependency, and "disappeared" for a considerable time. While Father attempted to schedule inpatient treatment, he did not complete treatment. He also failed to prove he sufficiently improved his parenting abilities when he neglected to visit V.B. for several months and did not improve on eight out of nine protective capacities. As such, the record supports the findings on this ground.

### IV.    Reasonable evidence supports the superior court's finding that DCS made diligent and reasonable efforts to provide appropriate reunification services to Parents.

¶50        Before terminating parental rights pursuant to A.R.S. § 8-533(B) the court must find that DCS made diligent reunification efforts. *See Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (explaining that "the juvenile court must also have found that [DCS] had made reasonable efforts to reunify the family or that such efforts would have been futile.") (citation omitted). The superior court is to consider both the availability of the services and the parent's participation. *Id.* at 454, ¶ 16. DCS need not provide an indefinite amount of time for remediation and "is not required to provide every conceivable service or to ensure that a

parent participates in each service it offers." *Tanya K. v. Dep't of Child Safety*, 240 Ariz. 154, 157, ¶ 11 (App. 2016) (citation and internal quotation marks omitted). "The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation and internal quotation marks omitted).

**¶51** As an initial matter, DCS asserts that Father did not challenge the finding that DCS made diligent reunification efforts and thus concedes this argument. *See* ARCAP 13(a)(5), (7) (noting that appellate brief shall contain references to the record in support of recitation of facts and argument); Ariz. R. P. Juv. Ct. 106(A) (applying ARCAP 13 to juvenile appeals); *see also Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (holding that failure to comply with ARCAP 13 can constitute waiver of that claim). While we can treat his silence as waiver, we choose not to, and conclude instead that the record supports the finding.[5]

**¶52** DCS provided numerous resources to Parents, including PSI substance abuse testing, TERROS substance abuse treatment, transportation, parent aide services, psychological evaluation, supervised visitation, parenting classes, and counseling. Yet despite DCS's efforts to aid Mother in overcoming her substance abuse, she continued to relapse and was dishonest on numerous occasions regarding using again. Additionally, not only did Father "disappear" for a portion of the dependency, he also engaged minimally in any service provided. The record shows that DCS persisted in diligently providing Parents with services. We find no error.

### V. The record supports the court's finding that terminating Parents' parental rights was in V.B.'s best interests.

**¶53** When a court reaches the best-interests analysis, it presumes the parent and child's interests diverge because it has already found by clear and convincing evidence that a statutory ground for termination is present. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018) (quoting *Kent K.*, 210 Ariz. at 286, ¶ 35). As such, "[o]nce a court determines that a parent is unfit, the focus shifts to the interests of the child as distinct

---

[5] Though we exercise our discretion to address the issue raised in this case, future noncompliance with Rule 13 of the Arizona Rules of Civil Appellate Procedure may result in waiver or even dismissal of the appeal. *See Clemens v. Clark*, 101 Ariz. 413, 414 (1966).

from those of the parent." *Kent K.*, 210 Ariz. at 285, ¶ 31. If the child will benefit from terminating parental rights or if the child will suffer harm by continuing the relationship, then terminating parental rights is in the child's best interests. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 20 (App. 2014).

¶54        Providing the child with stability and safety is a primary concern. *Alma S.*, 245 Ariz. at 150, ¶ 12. Courts, however, should not disregard a parent's rehabilitation efforts when conducting the best-interests analysis but instead should consider the totality of circumstances in existence at the severance determination. *Id.* at 151, ¶ 13. "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests." *Demetrius L.*, 239 Ariz. at 4, ¶ 12 (citation omitted).

¶55        The record contains sufficient evidence to support the superior court's finding that severance would be in V.B.'s best interests.[6] Parents have been unable to remedy their substance abuse issues and thus are unable to safely parent V.B. in the foreseeable future. The superior court found Parents had made some behavioral changes but not enough to be able to provide a safe environment for V.B. in the near future. The record shows Parents' substance abuse has disrupted their lives and would lead to further instability for V.B. Placing V.B. with a member of her extended family was not an option due to a lack of a willing, able, or appropriate caregiver. V.B. has been placed with a foster family who has been meeting her needs, adoption is possible, and would provide V.B. with permanency and stability. Thus, the superior court did not err in determining severance was in V.B.'s best interests.

---

[6] Mother argues that Father's right to a fair trial was violated and thus the best interests finding was erroneous. Father has not raised this issue on appeal and Mother does not have standing to raise it on Father's behalf. *See In re Estate of Friedman*, 217 Ariz. 548, 552, ¶ 11 (App. 2008); *see State v. Herrera*, 121 Ariz. 12, 15 (1978).

**CONCLUSION**

¶56          We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA