NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CHRISTOPHER B., *Appellant,*

*v.*

MIA D., A.B., J.B., *Appellees.*

No. 1 CA-JV 21-0356
FILED 9-22-2022

Appeal from the Superior Court in Maricopa County
No. JS519624
The Honorable Nicole Stoutner, Judge *Pro Tempore Retired*

**VACATED AND REMANDED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Thomas Vierling Attorney at Law, Phoenix
By Thomas A. Vierling
*Counsel for Appellee Mia D.*

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Peter B. Swann joined.

**P A T O N**, Judge:

¶1        Christopher B. ("Father") appeals the superior court's order terminating his parental rights to A.B. and J.B., arguing the court deprived him of his right to counsel.  Because we agree, we vacate the termination order and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2        Mia D. ("Mother") and Father were married and lived in Pennsylvania with their two children.  In January 2018, Mother served Father with divorce and custody papers.  In December 2018, Father was convicted of three domestic violence offenses stemming from an incident involving Mother and the children and was sentenced to six to seventeen years in a Pennsylvania prison.

¶3        In 2019, a Pennsylvania court accepted the parents' custody stipulation and granted Mother physical and legal custody of the children and permission to relocate.  Mother and the children moved to Arizona.  In May 2020, Mother petitioned the Maricopa County Superior Court to terminate Father's parental rights.  She simultaneously asked the superior court to assume jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act.

¶4        In June 2020, the superior court appointed counsel to represent Father in the termination proceeding, but six months later, that attorney moved to withdraw based on "a substantial and material breakdown of the attorney-client relationship."  The court granted counsel's motion and appointed a second attorney, Michael T. Westervelt, to represent Father.  Father sent the court a letter in February 2021, stating he tried to contact Westervelt several times but had not heard back from him.

¶5        In March 2021, the superior court assumed jurisdiction of the case and set a pretrial conference for April.  Father was not present at the April 2021 pretrial conference.  Westervelt was present and orally moved to withdraw as Father's counsel.  The court denied his motion and scheduled the trial for July 2021.

¶6        In June 2021, Father wrote a letter to the superior court outlining his concerns regarding the communication "breakdown" he was experiencing with Westervelt. Father explained that he had been "available and waiting to participate" in the April pretrial conference but was not connected to the call.  Westervelt told the court he was not aware he had to

call the prison to get Father connected to the call. Father also said he had attempted to contact Westervelt nine times since his January appointment but was unable to reach him. Father outlined several outstanding issues he had not been able to discuss with counsel and concluded, "As such, I would like to have considered, at the next conference, my representing myself and the process for this."

¶7        Trial commenced on July 16, 2021. Father appeared telephonically from prison and Westervelt appeared as his counsel. At the outset, Westervelt told the court he was "not in a position to go forward with trial." Father explained that, despite his best efforts, he had been unable to communicate with his appointed attorney until four days prior to trial, and therefore retained private counsel. Father asked for a sixty-day continuance to allow his newly hired private counsel to prepare for trial. The court noted the case was "the longest running case" on its calendar and needed resolution.

¶8        Westervelt told the court that although he felt he could not "effectively represent" Father due to "irreconcilable differences," he had "spent a lot of time" on Father's case and would proceed to trial if ordered to. The court allowed Westervelt to withdraw and continued the trial for three days, until July 19, to allow Father's private counsel to file a substitution motion. The court noted no further continuance would be granted and Father would be expected to proceed with trial on July 19—either with private counsel or pro se. The court admonished Father, stating he had participated in court proceedings since December 2020, giving him "more than enough time to prepare [his] case in this matter." Father said he was "not qualified" to represent himself.

¶9        The trial commenced on July 19, 2021. Father was initially present telephonically. Father's private counsel appeared but noted he had been retained by Father on July 16 and was making a limited appearance solely to request a two-week continuance to prepare for trial. The superior court responded that the continuance request was another delay tactic by Father and was "especially unfair for the children and their best interests." The court made the following findings: (1) Father requested to represent himself in his June 12 letter, (2) he was provided two court-appointed attorneys, (3) he had sufficient notice of the hearing and was aware of the date given the various motions he filed, (4) Westervelt filed objections and provided witness and exhibit lists indicating he was preparing for trial despite irreconcilable differences with Father, and (5) a continuance would not be in the best interests of the children.

¶10 The superior court offered to continue the matter for three days—until July 22—but Father's counsel responded he was not available on that date. The court dismissed Father's private counsel and ordered Father to represent himself, without confirming whether Father knowingly, intelligently, and voluntarily was waiving his right to counsel. Father objected, stating he was not "qualified" or "prepared" to represent himself. The superior court told Father he had sufficient notice of the trial dates and found that Father was delaying the proceedings.

¶11 The trial proceeded that day. Minutes into it, Father told the superior court he would soon be disconnected from the call because the hearing notice he received said the hearing would only last an hour and that was the information he shared with the prison. The court took a fifteen-minute recess and instructed the parties to stay on the line.

¶12 When the hearing resumed, Father was no longer present. After some discussion regarding communications with prison staff, the court said Father "chose[] not to participate" and it was "not going to stop the hearing simply because of that behavior." The court ordered the trial to proceed by default, noting that Father had been warned about the consequences of failing to appear.

¶13 In early August 2021, the superior court terminated Father's parental rights and made the following findings: (1) Father's request for a continuance was not warranted, (2) Father "knowingly and voluntarily" absented himself from the second half of the July 19 proceeding, (3) Father was repeatedly warned by the court of the consequences of his absence, (4) no "good cause" existed for Father's "voluntary" absence at trial, and (5) "Father's voluntary and knowing failure to appear constituted waiver and admission to the allegations" in Mother's petition. Father appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶14 Father argues the court violated his due process rights by dismissing his appointed attorney, denying his private attorney a continuance to prepare for trial, and ordering that Father proceed to trial pro se. We agree. Father raises additional arguments on appeal, but because we find the deprivation of his right to counsel to be dispositive, we decline to address them.

¶15 "[T]he right to counsel in a severance proceeding is . . . of constitutional dimension." *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz.

257, 260, ¶ 14 (App. 2003); *cf.* A.R.S. § 8-221 (codifying this right). "It is constitutionally impermissible to require a party entitled to counsel to choose between self-representation and representation by a lawyer with whom [they have] a completely fractured relationship, clearly an irreconcilable conflict." *Tammy M. v. Dep't of Child Safety*, 242 Ariz. 457, 462, ¶ 21 (App. 2017) (quoting *State v. Moody*, 192 Ariz. 505, 509, ¶ 23 (1998)). At the same time, irreconcilable differences alone "[are] not sufficient to merit forfeiture of the right to counsel without advance warning." *Daniel Y.*, 206 Ariz. at 263, ¶ 25. We review the superior court's decision to permit counsel to withdraw and to grant or deny a continuance for an abuse of discretion. *State v. Jones*, 185 Ariz. 471, 482 (1996) (granting counsel's motion to withdraw); *State v. Barreras*, 181 Ariz. 516, 520 (1995) (granting a continuance). The superior court's exercise of its discretion must not result in a "miscarriage of justice or deprive[] one of the litigants of a fair trial." *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 308, ¶ 31 (App. 2007) (citation omitted).

¶16        While the superior court may present a parent with the option either to retain his current counsel with which he has no true irreconcilable difference or to represent himself, it may not permit current counsel to withdraw and require a parent to represent himself without first warning him of the dangers of doing so. *See Tammy M.*, 242 Ariz. at 462, ¶¶ 18-20.

¶17        Here, Westervelt was appointed in January 2021, but despite Father's multiple attempts to contact him, they did not communicate until four days before trial. The court permitted Westervelt to withdraw, which meant Father would need to turn to his newly-hired private counsel because he did not want to represent himself. And Father's private counsel requested a two-week continuance to prepare given that he was retained on July 16, the first day of trial. This was a reasonable and justified request given the circumstances, but the court denied it.

¶18        Appellees argue that the court was justified in denying Father's request for a continuance because Father had engaged in "hybrid representation" and thereby demonstrated he could represent himself. "Hybrid representation involves concurrent or alternate representation by both defendant and counsel." *State v. Murray*, 184 Ariz. 9, 27 (1995). Indeed, Father filed documents on his own behalf with the superior court while represented by counsel and had previously mentioned possibly representing himself. But this request was a consequence of Father's inability to contact his attorney and was neither an unequivocal request to represent himself nor evidence of a knowing, intelligent, and voluntary waiver of his right to counsel. The requirement for an unequivocal request

to represent oneself acts as a "safety net" to prevent inadvertent waiver when a defendant is "thinking aloud about the benefits and pitfalls of self-representation." *State v. Henry*, 189 Ariz. 542, 548 (1997) (citing *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir. 1989)). The record must indicate that a waiver of the right to counsel was "knowingly, intelligently and voluntarily made" for the waiver to be effective. *State v. Avila*, 127 Ariz. 21, 25 (1980).

**¶19** We recognize the superior court's apparent frustration, considering it appointed Father two attorneys and he hired a third, and that continuing the trial to allow his third attorney time to prepare would further delay the case, which was "the longest running case" on its calendar. But the initial nearly year-long delay waiting for the Pennsylvania court to resolve the jurisdiction issue was not caused by Father. Although Mother first filed the case in May 2020, the superior court did not assume jurisdiction until March 2021. The record here does not show that Father's conduct was "so egregious that it amounted to a forfeiture of [his] right to counsel." *See Daniel Y.*, 206 Ariz. at 262-63, ¶ 25. Father was deprived of his right to counsel and thus was not provided with fundamentally fair procedures that satisfied due process. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)).

## CONCLUSION

**¶20** We vacate the superior court's order terminating Father's parental rights and remand for further proceedings.



AMY M. WOOD • Clerk of the Court
FILED:    AA