77 P.3d 55

**DANIEL Y., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY and Andrew Y., Appellees.**

No. 1 CA–JV 02–0121.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 2, 2003.

As Amended Oct. 6, 2003.

258

Terry Goddard, Attorney General, By Stacy L. Shuman, Assistant Attorney General, Phoenix, Attorneys for Appellee/ADES.

Timbanard & Kamper LLP, By Thomas A. Vierling, Phoenix, Guardian ad Litem for Andrew Y.

Steven G. Clark, P.C., By Steven G. Clark, Phoenix, Attorneys for Appellant.

## OPINION

SNOW, Judge.

¶ 1 Daniel Y. appeals from a juvenile court order severing his parental rights. For the following reasons, we vacate the severance order and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In May 2000, Child Protective Services ("CPS") received a referral alleging that Daniel Y. and his wife had engaged in prolonged physical, mental and emotional abuse of Daniel Y.'s son, Andrew.[1] Because of the referral, Andrew was removed from Daniel Y.'s custody.

¶ 3 Andrew was found dependent in June 2000. At the same time, the juvenile court issued a no-contact order between Daniel Y. and Andrew, at least in part because Andrew feared retaliation for his claims of abuse. Daniel Y. and his wife were subsequently arrested and charged with nine counts of felony child abuse relating to their treatment of Andrew.[2]

¶ 4 While the CPS case plan initially called for family reunification, the plan changed to severance and adoption following further investigation of the abuse allegations and a recommendation by the Foster Care Review Board. CPS then filed a motion to terminate Daniel Y.'s parental rights, alleging that Andrew had been abused and neglected pursuant to Arizona Revised Statutes ("A.R.S.") section 8–533(B)(2) (2001) and that Andrew had been in an out-of-home placement for both nine and fifteen months pursuant to A.R.S. § 8–533(B)(7)(a) and (b) (2001).[3]

¶ 5 Daniel Y. initially retained his own counsel, Debra Brockway, to represent him in the dependency and severance proceedings. Brockway withdrew six months later, citing "strategic differences" between herself and Daniel Y. Next, Maximiliano Garcia entered a notice of appearance on behalf of Appellant. While no motion to withdraw appears in the record before us, the juvenile court noted in a minute entry some months later that Garcia had failed to appear for a hearing.[4] The court then appointed Jonathan Schubert as counsel for Daniel Y. pursuant to the provisions of A.R.S. § 8–221(B) (Supp.2002).[5]

¶ 6 Five months later, Schubert filed a motion to withdraw citing irreconcilable differences. When granting Schubert's motion,

1. Daniel Y.'s first wife, the biological mother of his two children, died following the premature birth of her second child Danielle. Daniel Y. married his second wife, the one involved in the abuse allegations, a year later.

2. At the time of this appeal, the criminal charges against Daniel Y. and his wife were still pending, with a jury trial scheduled in November 2003.

3. These latter sections have since been renumbered as A.R.S. §§ 8–533(B)(8)(a) and (b). See A.R.S. §§ 8–533(B)(8)(a), (b) (Supp.2002).

4. Maximiliano Garcia was disbarred in March 2003 following numerous ethical violations, including the abandonment of clients and their files and a failure to competently and diligently represent his clients.

5. Section 8–221(B) provides, in relevant part:
   If a juvenile, parent or guardian is found to be indigent and entitled to counsel, the juvenile court shall appoint an attorney to represent the person or persons unless counsel for the juvenile is waived by both the juvenile and the parent or guardian.
   A.R.S. § 8–221(B) (Supp.2002).

the court cautioned Daniel Y. by minute entry, stating:

> [Appellant] is entitled to be represented by an attorney. However, he is not entitled to representation by an attorney of his choice. This court would find it very difficult to grant any other motion to withdraw filed by an attorney or request for a new attorney filed by [Appellant].

The juvenile court subsequently appointed Daniel Terrell to represent Daniel Y.[6] Almost two months later, and only two weeks prior to the severance hearing, Terrell filed a motion to withdraw that also alleged irreconcilable differences. Following an *ex parte* in camera hearing with Terrell, the court granted the motion, stating:

> The Court will proceed with the trial date as previously scheduled. [Appellant] will need to hire either private counsel or represent himself as this is the second time that he has caused counsel to be relieved. The Court also notes that [the Court's] minute entry of 01–08–02 warned [Appellant] that any subsequent motion to withdraw would not be lightly granted or the Court would be reluctant to appoint a new attorney for the father. The Court is not appointing another attorney at this time.

Following Terrell's withdrawal, Terrell sent a letter to Daniel Y. informing him of the upcoming trial dates and telling him to call Terrell to procure a copy of the case file.[7]

¶ 7 When the severance trial began on April 10, 2002, Daniel Y. announced his appearance, adding, "here without counsel, cannot afford an attorney." When asked if he was ready to proceed, he stated, "Your Honor, I have no counsel. I do not know—I can't answer that question." The court responded:

> Well, you have no counsel because the Court permitted your last counsel, Mr. Terrell, to withdraw. And the Court before that permitted the counsel before that to withdraw. And I had decided not to

appoint a third attorney for you because of the nature of the conduct that required the previous two counsel to be permitted to withdraw.

So you do need to answer the question. Are you going to proceed today defending your parental rights or not?

Daniel Y. replied, "Without the advice of counsel, Your Honor, I don't know how to answer." The court responded, "All right. Then we'll proceed."

¶ 8 The State called Daniel Y. as its first witness, but he refused to testify without the advice of counsel. Following several recesses, and a contempt warning by the court, the court appointed Lon Taubman to represent Daniel Y. "solely on the issue of whether [he] is subject to contempt at this time for refusing to be sworn in and testify when called as a witness for the [State]."

¶ 9 Taubman advised the court that his client had a rational basis for his refusal to testify, arguing:

> [Appellant] is currently charged criminally with either abuse or neglect. He's been advised by criminal counsel not to incriminate himself at the dependency [hearing]. He's been advised by criminal counsel not even to submit to psychological evaluations, because that could be held against him.... He's afraid that if he says anything it's going to be held against him in the criminal matter.

¶ 10 Taubman remained in the courtroom while Daniel Y. testified as to his name, address, that Andrew and Danielle were his children, and that the children's biological mother was deceased. Taubman was then excused from further service and left the courtroom. The State continued to present witnesses but Daniel Y. did not conduct any cross-examination. At the close of the State's evidence, Daniel Y. stated he had no witnesses to present, and "[n]ot having counsel," had no closing argument. The court took the matter under advisement. Follow-

---

**6.** Prior to Terrell's appointment, the juvenile court appointed Michael Gertell as Appellant's counsel. However, the next day Gertell filed a motion to withdraw, and the juvenile court granted that motion. There is no evidence in the record that Gertell's action was the result of an irreconcilable conflict between himself and Appellant.

**7.** There is no evidence in the record that Daniel Y. either sought or received these copies.

ing the hearing, the juvenile court issued an order terminating Daniel Y.'s parental rights.

## DISCUSSION

¶ 11 On appeal, Daniel Y. argues that the juvenile court's refusal to provide him with counsel at the severance hearing violated his right to due process.

¶ 12 By statute, Arizona mandates the appointment of counsel for indigent parents involved in severance proceedings. A.R.S. § 8–221(B) (Supp.2002) ("If a . . . parent . . . is found to be indigent and entitled to counsel, the juvenile court *shall* appoint an attorney to represent the person." (emphasis added)); *Denise H. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 257, 259, ¶ 6, 972 P.2d 241, 243 (App.1998) ("An indigent parent against whom a [severance] petition has been filed has the right to appointed counsel."). Furthermore, the failure to allow counsel to effectively participate in severance proceedings is reversible error. As the Arizona Supreme Court has stated:

> [T]he denial of the right to effective participation of counsel constitutes a denial of due process of law so gross as to lack a necessary attribute of a judicial determination. We hold that an order or judgment of a Superior Court which is predicated on a hearing in which a parent is denied the opportunity to be heard by counsel if requested is void.

*Ariz. State Dep't of Pub. Welfare v. Barlow*, 80 Ariz. 249, 253, 296 P.2d 298, 300 (1956); *Pima County Juv. Action No. J–64016*, 127 Ariz. 296, 298, 619 P.2d 1073, 1075 (App.1980) (reversible error for court to proceed with dependency hearing after determining mother was entitled to appointment of counsel, but before actually appointing counsel).

¶ 13 The State does not argue that Daniel Y. does not have a right to counsel. Rather, it argues that he either waived or forfeited his right to counsel because he was appointed

counsel twice and both appointed counsel withdrew as a result of irreconcilable differences with him. Under such circumstances, the State argues, the juvenile court is under no obligation to appoint additional counsel. The State further argues that because a severance hearing is a civil proceeding and because Daniel Y.'s right to counsel does not arise from the Sixth Amendment, he can and did waive his right to counsel more easily than he might have done under the Sixth Amendment.

¶ 14 We have previously determined that a parent's right to counsel in severance proceedings is not co-extensive with a criminal defendant's right to counsel under the Sixth Amendment. *See Denise H.*, 193 Ariz. at 257, ¶¶ 5–7, 972 P.2d at 241 (unlike criminal defendant, parent in a severance proceeding is not entitled to a fundamental error review of the record pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967)). That is not to say, however, that the right to counsel in a severance proceeding is not of constitutional dimension. We have indicated that it is. *See id.* at 259, ¶ 6, 972 P.2d at 243 ("An indigent parent against whom a [severance] petition has been filed has the right to appointed counsel, but that right is afforded by statute, [A.R.S. § 8–221(B) ], and the Due Process Clause . . . not the Sixth Amendment." (internal citations omitted)); *J–64016*, 127 Ariz. at 298, 619 P.2d at 1075 (a parent's statutory right to counsel "is legislative recognition that due process requires appointment of counsel in a dependency proceeding where the parent faces losing custody of a child.").[8]

¶ 15 Because A.R.S. § 8–221(B) implements a due process right, the standard for waiver of counsel under the statute is not different than it is for any other constitutional right. The waiver of constitutional rights is not easily presumed. *See, e.g., Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82

---

**8.** This protection is necessary because "[a] parent's right to 'the companionship, care, custody, and management of his or her children' is a fundamental, constitutionally protected right." *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 200, ¶ 8, 42 P.3d 1163, 1165 (App.2002) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92

S.Ct. 1208, 31 L.Ed.2d 551 (1972)). "These fundamental rights do not evaporate simply because the natural parents have not been model parents or have lost temporary custody of their child to the state." *Id.* (internal citations and quotation marks omitted).

L.Ed. 1461 (1938) ("[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." (citation omitted)); *State v. Moody,* 192 Ariz. 505, 509, ¶ 22, 968 P.2d 578, 582 (1998) (citing *State v. Cornell,* 179 Ariz. 314, 322, 878 P.2d 1352, 1360 (1994)). Prior to finding that a client has waived his right to counsel, Arizona law requires that he be advised of "the dangers of self-representation, and the difficulties involved in defending oneself without formal legal training." *State v. Djerf,* 191 Ariz. 583, 591, ¶ 23, 959 P.2d 1274, 1282 (1998).

¶ 16 Even in the context of waiver resulting from a client's misconduct, most courts hold that the client "must first be warned that his misconduct will thereafter be treated as a waiver." *State v. Thompson,* 355 S.C. 255, 584 S.E.2d 131, 135 (citing *State v. Boykin,* 324 S.C. 552, 478 S.E.2d 689, 691 (Ct. App.1996)); *see also In re Welfare of G.E.,* 116 Wash.App. 326, 65 P.3d 1219, 1225 (2003) (before finding waiver of the right to counsel through conduct, a court must warn parent of the consequences of his actions and of the "risks and disadvantages of self-representation").

¶ 17 Arizona law similarly requires such advance warning. In *Moody,* 192 Ariz. at 506, ¶ 5, 968 P.2d at 579, the defendant claimed space aliens caused him to commit the murders for which he had been convicted. When his request to substitute counsel prior to trial was denied, he represented himself at trial and was convicted. *Id.* at 507, ¶ 9, 968 P.2d at 580. The supreme court held that the trial court's refusal to allow the defendant to substitute appointed counsel where he had made no previous attempts to obtain new counsel by raising an "irreconcilable conflict" was reversible error. *Id.* at 508, ¶ 21, 968 P.2d at 581. Concurring, Justice Martone admonished that "[i]f, upon remand, another irreconcilable conflict develops as a result of Moody's insistence upon the assertion of his space alien theory, then Moody will have to choose between his lawyer or self-representation.... The trial court must make this point very clear to Moody." *Id.* at 509, ¶ 26, 968 P.2d at 582.

¶ 18 Justice Martone's insistence that the trial court provide advance warning to the defendant that additional irreconcilable conflicts might oblige him to choose between his right to counsel and his right to self-representation is required by our case law establishing standards for waiver of a constitutional right. *See, e.g., State v. Avila,* 127 Ariz. 21, 25, 617 P.2d 1137, 1141 (1980) ("[I]n any proceeding involving the surrender of Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made. Such condition of mind, moreover, will not be presumed from a silent record.").

¶ 19 In *State v. Henry,* 189 Ariz. 542, 944 P.2d 57 (1997), the Arizona Supreme Court reviewed a trial court's disposition of a similar situation. In *Henry,* a defendant sought to substitute his appointed counsel due to an "irreconcilable conflict." *Id.* at 546, 944 P.2d at 61. The court denied the request, finding no such conflict. *Id.* It indicated that in light of the defendant's right to represent himself, the defendant could choose to keep his present attorney or he could choose to represent himself, but the court declined to appoint substitute counsel. *Id.* When the defendant refused to make either choice unless the court indicated whether it would grant him additional time to prepare for the scheduled hearing if he chose to represent himself, the court proceeded with the hearing as though the defendant had not waived his right to counsel. *Id.*

¶ 20 On review, the supreme court affirmed the trial court in all respects. It noted that although the defendant had a right to counsel, he did not have a right to counsel of his own choosing, nor to a meaningful relationship with counsel. *Id.* at 546, 944 P.2d at 61 (citations omitted). It further noted that the defendant had a proclivity to change counsel and had claimed "irreconcilable conflict" with a series of previous attorneys. *Id.* at 546–47, 944 P.2d at 61–62. In such circumstances, "the court may deny a motion for yet another lawyer where the orderly administration of justice so requires." [9] *Id.* at 547, 944 P.2d at 62 (citing

---

**9.** The court noted that, in evaluating a request to

withdraw, a court normally considers:

**262**

*State v. Lee,* 142 Ariz. 210, 220, 689 P.2d 153, 163 (1984)).

¶ 21 The court did not hold, however, that the trial court could allow existing counsel to withdraw and require the defendant to proceed unrepresented without providing the defendant with advance warning. It instead affirmed the trial court's determination that the defendant must either keep his current counsel, with whom he had no real irreconcilable conflict, or elect to represent himself. *Henry,* 189 Ariz. at 546–48, 944 P.2d at 61–63. The court further held that if the defendant chose to represent himself, he had to make an unequivocal request to do so. *Id.* at 548, 944 P.2d at 63 (citing *State v. Rickman,* 148 Ariz. 499, 503, 715 P.2d 752, 756 (1986)). It found no error when, after the defendant refused to make an election, the trial court proceeded as if the defendant had chosen to retain counsel. *Id.*

¶ 22 Unlike the facts in either *Henry* or *Moody,* the trial court in this matter did not warn Daniel Y. that a repeated instance of irreconcilable conflict would cause him to choose between counsel and self-representation. Moreover, the trial court did not allow Daniel Y. the choice of keeping his present counsel, nor did it advise him of the risks of self-representation. Instead, Daniel Y.'s second appointed counsel moved to withdraw and the court granted that request after an *ex parte* in camera hearing with counsel. The court then refused to appoint replacement counsel, stating it had previously warned Daniel Y. it would refuse to appoint any more counsel.

■ ¶ 23 In fact, however, the court had not previously warned Daniel Y. that he would lose his right to counsel. Rather, the court indicated to Daniel Y. at the time his first appointed attorney withdrew that it would "find it very difficult to grant any other motion to withdraw filed by an attorney or request for a new attorney filed by [Appellant]." Had the court followed this

Whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed [since the inception of the

course of action, Daniel Y. would have been represented by counsel at the severance hearing. By granting second appointed counsel's motion to withdraw and then refusing to appoint new counsel, the trial court left Daniel Y. unrepresented and obliged to represent himself, without warning that such a result would occur, without warning of the difficulties of self-representation, and without allowing him the choice of maintaining a relationship with counsel. The trial court's minute entry after Schubert's withdrawal that it would not easily permit future withdrawals or substitutions was not enough to put Appellant on notice that his conduct could result in the waiver of his right to counsel. Under such circumstances, we find that Daniel Y. did not knowingly or voluntarily waive that right.

■ ¶ 24 In addition, we do not find that Daniel Y. engaged in conduct sufficient to forfeit his right to counsel. Some jurisdictions have determined that individuals may forfeit their right to counsel without advance notice by engaging in "extremely dilatory conduct." *See Welfare of G.E.,* 65 P.3d at 1224 (defining "extremely dilatory conduct" as that "more severe than conduct sufficient to warrant waiver by conduct"); *see also United States v. McLeod,* 53 F.3d 322, 325 (11th Cir.1995) ("[A] defendant who is abusive toward his attorney may forfeit his right to counsel."); *King v. Superior Court,* 107 Cal.App.4th 929, 132 Cal.Rptr.2d 585, 588–89 (2003) (defendant may forfeit right to counsel through violent conduct directed at counsel but forfeitures should be "last resort" and "should occur only after lesser measures to control defendant . . . have failed.").

■ ¶ 25 Here, the trial court told Appellant that it had "decided not to appoint a third attorney for [Appellant] because of the nature of the conduct that required the previous two counsel to be permitted to withdraw." However, the record on appeal provides no indication of what that conduct was, nor the does the juvenile court make a find-

proceeding] and trial; the proclivity of the defendant to change counsel; and quality of counsel.
*Henry,* 189 Ariz. at 546–47, 944 P.2d at 61–62 (quoting *State v. LaGrand,* 152 Ariz. 483, 486–87, 733 P.2d 1066, 1069–70 (1987)).

ing that the conduct was so egregious that it amounted to a forfeiture of Appellant's right to counsel. The record before us only suggests that whatever the conduct was, it amounted to the creation of an irreconcilable difference. As we have explained above, "irreconcilable differences" between client and counsel, without more, is not sufficient to merit forfeiture of the right to counsel without advance warning.

■ ¶ 26 Accordingly, because Daniel Y. made no unequivocal request to represent himself and did not knowingly or voluntarily waive, or otherwise forfeit, his right to counsel, the juvenile court erred in severing his parental rights without providing appointed counsel.

## CONCLUSION

¶ 27 For the preceding reasons, we vacate the trial court's order severing Daniel Y.'s parental rights and remand for a new severance proceeding.

CONCURRING: JAMES B. SULT, Presiding Judge and MAURICE PORTLEY, Judge.