NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

SHIRLEY R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.M., P.M., C.M., *Appellees*.

No. 1 CA-JV 18-0050
FILED 9-13-2018

---

Appeal from the Superior Court in Maricopa County
Nos.  JD529708
JS518713
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

---

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Shirley R. ("Mother") challenges the superior court's order terminating her parental rights to J.M., P.M., and C.M.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY[1]**

¶2        Mother is the biological mother of J.M., born May 2013; P.M., born July 2014; and C.M., born August 2015 (collectively, the "Children"). Tommy M. ("Father") is their biological father.[2]  The Children are Indian children as defined by the Indian Child Welfare Act ("ICWA") and are affiliated with the Sault Ste. Marie Tribe of Chippewa Indians.

¶3        In February 2016, the Department of Child Safety ("DCS") took the Children into care due to Mother's ongoing substance abuse and Father's inability to care for the Children.[3]  DCS filed a dependency petition alleging the Children were dependent as to Mother due to substance abuse, neglect, and mental illness.  A month later, DCS returned the Children to Mother's and Father's care.

¶4        In May 2016, Mother abandoned the home for a period of weeks and took the State-provided food assistance card, leaving Father and

---

[1]        We view the facts in the light most favorable to sustaining the superior court's findings.  *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016).

[2]        Father's rights were also terminated.  However, he is not a party to this appeal.

[3]        DCS had received previous referrals including when J.M. was born substance-exposed to methamphetamine; when Mother was experiencing mental health issues on delivery of P.M.; and in May 2014, when the parents were unable to meet the basic needs of J.M.

the Children without means to obtain food. As a result, and considering Mother's continued untreated substance abuse and mental-health issues, DCS, the Case Manager, and Father implemented a safety plan. The plan called for no unsupervised contact between Mother and the Children. Mother failed to comply with drug testing, however, and Father allowed her to return to the home in violation of the safety plan. As a result, DCS removed the children again in June 2016.

¶5         DCS offered Mother numerous TERROS substance abuse treatment referrals, random drug screens through PSI and TASC, a psychological evaluation, a psychosexual evaluation, a bonding best interest assessment, individual counseling, transportation, and supervised visitation through a parent aide. However, Mother failed to meaningfully engage in drug testing services, the psychosexual evaluation, or the bonding and best interest assessment. She did complete a psychological evaluation in October 2016, but she participated inconsistently in parent aide services. She completed only the intake and two sessions of individual counseling.

¶6         The superior court found the Children dependent in September 2016. At that time, the court also found that DCS had made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that the efforts had been unsuccessful.

¶7         DCS moved for termination of Mother's parental rights in September 2017, on the grounds of mental illness, substance abuse, nine months in an out-of-home placement, and fifteen months in an out-of-home placement.

¶8         After a termination adjudication hearing, the superior court terminated Mother's parental rights on the grounds of substance abuse, nine months in an out-of-home placement, and fifteen months in an out-of-home placement. It also found termination was in the Children's best interests. Finally, it again found that DCS had made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that those efforts had proven unsuccessful.

¶9         Mother timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(B).

**DISCUSSION**

I.     Indian Child Welfare Act

**¶10**        Aside from her argument that DCS did not engage in active efforts to reunify her with the Children, Mother does not challenge the grounds upon which the superior court terminated her parental rights.  She therefore abandons and waives any contention that the court erred in granting severance on those bases.  *Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017).

**¶11**        To terminate parental rights, the superior court must find by clear and convincing evidence the existence of at least one of the statutory grounds for termination enumerated in A.R.S. § 8-533(B) and must find by a preponderance of the evidence that termination would serve the child's best interests. Ariz. R.P. Juv. Ct. 66(C); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000).

**¶12**        When an Indian child is the subject of a severance petition, ICWA requires the court to also find "that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."  25 U.S.C. § 1912(d).  In addition, the court must find, based on evidence "including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."  25 U.S.C. § 1912(f).

**¶13**        Mother argues for the first time on appeal that the superior court abused its discretion by terminating her parental rights because DCS failed to prove that it had made active efforts to prevent the breakup of the Indian family and that such active efforts had been unsuccessful.  Though Mother admits DCS had provided her with services, she argues her substance abuse issues were so severe that DCS should have referred her to an inpatient drug-abuse program.  However, at no time during her extended dependency proceedings did Mother object to the sufficiency of the drug treatment services DCS provided, nor did she at any time request inpatient services.  A parent who does not object to the sufficiency of reunification services in the superior court is precluded from later challenging that finding on appeal.  *See State v. Georgeoff*, 163 Ariz. 434, 437 (1990) (explaining that "[e]ven constitutional rights may, of course, be waived").  Therefore, Mother has waived any argument that DCS had failed

to make active efforts to prevent the breakup of her family. *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178-79, ¶¶ 16, 18 (App. 2014).

¶14    Waiver notwithstanding, when Mother had the opportunity to participate in rehabilitative services, she did not. Instead, Mother consistently failed to submit to drug testing, with five TERROS referrals closing due to Mother's lack of attendance. When Mother was scheduled to commence a 90-day inpatient treatment program in December 2016, she left the facility after the first ten minutes. Additionally, after her fifth referral, TERROS reported Mother had not attended drug screens and was not making progress toward treatment goals. Instead, in December 2017, Mother was arrested after methamphetamine and a used syringe were found in her purse. In addition, Mother failed to fully participate in the October 2016 psychological evaluation—she discontinued, after completing just a quarter of the assessment. According to Dr. Brimlow, the qualified expert witness tasked with administering Mother a psychological evaluation, he encouraged Mother to return and complete testing, but Mother responded that she was "just going to click random buttons," and "just wanted to get it done and over with." As a result of this evaluation, Mother was referred for a psychosexual evaluation and a bonding assessment. Mother did not participate in either evaluation. Likewise, the parent-aide services and supervised visitation referral were closed due to Mother's inconsistent attendance and unwillingness to accept guidance on matters such as age-appropriate behaviors for the Children. The record supports the superior court's findings that DCS made active efforts to prevent the breakup of the Indian family and that those efforts have proven unsuccessful.[4]

II.    Assistance of Counsel

¶15    Mother argues for the first time on appeal that the court erred by failing to grant her trial-day request for a continuance and to appoint new counsel when, according to her, it became clear there was a conflict between the two. When considering an indigent parent's request for new counsel, courts should consider the rights and interests of the requesting parent against the necessity of judicial economy. *See State v. LaGrand*, 152 Ariz. 483, 486 (1987). We review a court's denial of a request for substitute

---

[4]    The superior court also found, and Mother does not contest, pursuant to 25 U.S.C. § 1912(f), that the continued custody of the Children by Mother is likely to result in serious emotional or physical damage to the Children.

counsel for an abuse of discretion. *State v. Paris-Sheldon*, 214 Ariz. 500, 504, ¶ 8 (App. 2007).

**¶16** Although one may ask for a change of appointed counsel based on the presence of an irreconcilable conflict, an indigent parent must first present specific factual allegations that raise a colorable claim of such a conflict with appointed counsel. *See State v. Torres*, 208 Ariz. 340, 343, ¶ 9 (2004). Here, Mother did not raise a colorable claim that necessitated further inquiry by the court. Between the months of February and September of 2016, Mother attended seven dependency hearings with her court-appointed counsel. A review of the record before us reflects that at no time during those court proceedings did Mother raise any concerns or dissatisfaction with her counsel's performance. Then, between December and September of 2017, Mother stopped coming to court. She failed to appear at any of the seven hearings conducted during that time, and the record is devoid of any excuse for her absences. More than a year after her last court appearance, on the first day of trial, Mother appeared in court and, without more, requested new court-appointed counsel and a delay of proceedings. Neither Mother, nor counsel, advised the court of any justification for either request. The superior court advised Mother of the dangers of self-representation and allowed her to choose whether to go forward with counsel or represent herself. Presumably Mother chose the former as evidenced by counsel's continued representation throughout the proceedings without further objection from Mother. Given the record and the fact that granting Mother's request at such a late stage of the proceedings would have caused a significant delay, the superior court did not abuse its discretion in denying Mother's requests.

**¶17** Mother also seems to assert, without specifics, that her court-appointed counsel was ineffective. Indigent parents facing severance proceedings have the statutory right under A.R.S. § 8–221(B) and the Due Process Clause to court-appointed counsel. *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 260, ¶¶ 14-15 (App. 2003). Assuming without deciding that ineffective assistance of counsel may constitute an independent ground for appealing a termination order, the parent must first establish "that counsel's representation fell below prevailing professional norms and that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *John M. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 320, 323-25, ¶¶ 8, 17 (App. 2007). Although Mother now claims, without explanation, that she was unable to communicate with her lawyer in the weeks before trial and as a result, she could not participate in trial preparation, she does not claim her counsel's trial performance was

deficient or that she suffered any resulting prejudice. Accordingly, this claim also fails.

## CONCLUSION

**¶18** For the foregoing reasons, we affirm the superior court's order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA