NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOAN G., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, K.W., K.P., N.P., A.P., C.P., *Appellees.*

No. 1 CA-JV 22-0033
FILED 9-13-2022

Appeal from the Superior Court in Yavapai County
No. P1300JD201900001
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Michael J. Brown joined.

_____

**P E R K I N S**, Judge:

¶1        Joan G. ("Mother") appeals the juvenile court's orders adjudicating five of her children dependent and terminating her parental rights to her four daughters. Father is not a party to this appeal. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        Mother has four daughters: Kate, born June 2011; twins Kira and Nora, born December 2013; and Alice, born July 2018. Mother also has two sons: Caleb, born April 2020; and an older son that is not a party to this appeal. We use pseudonyms to protect the children's identities.

¶3        In November 2018, police responded to a domestic violence incident between Mother and Father (collectively "Parents"). Father lit their porch on fire and threatened to burn the home with his daughters inside. Dangerous debris like dead rats and rat feces filled their home, which lacked safe areas for the daughters to sleep or play. Parents' methamphetamine and paraphernalia were within the daughters' reach. Police arrested Parents and the Department of Child Safety ("DCS") removed the daughters. Mother pled guilty to child abuse and possession of drug paraphernalia, and the superior court sentenced her to at least 90 days in jail and three-years' supervised probation.

¶4        DCS filed a dependency petition that same month, alleging Mother engaged in neglect, domestic violence, and substance abuse. Mother did not contest this dependency. Father's successful engagement in services led the juvenile court to place the daughters back in his care, and Mother received some unsupervised and overnight visits with them. In April 2020, Mother gave birth to Caleb, who was born substance exposed to marijuana. Instead of removing Caleb, DCS referred Mother for additional services at her father's home where she lived.

¶5        In July 2020, the juvenile court dismissed the dependency petition. Father continued to serve as the daughters' primary caretaker and

Mother received weekend parenting time. But Parents promptly regressed. In December 2020, DCS discovered Mother again used methamphetamine. By June 2021, Father's home returned to disarray.

**¶6** Upon learning about the dangerousness of Father's property in August 2021, DCS temporarily placed the daughters with Mother under a present danger plan. DCS worried about the stability of Mother's housing arrangement because her roommate, who owned the home, wanted them to leave. In early October 2021, Mother was jailed for a March 2021 probation violation and police cited her for an open container violation. DCS temporarily placed the children with their paternal aunt.

**¶7** On October 17, 2021, during a family visit with Parents and all five children, Mother punched paternal aunt in front of Kate. Caleb later tested positive for methamphetamine, though it is unclear when and where he ingested it. DCS filed another dependency petition as to all five children, alleging neglect due to violence, failure to provide basic needs, and an unstable living environment. DCS also petitioned to terminate Mother's parental rights as to the daughters on substance abuse and prior removal grounds.

**¶8** The juvenile court held a consolidated dependency and termination hearing in January 2022. Mother was not present when the hearing began but the court set aside Mother's failure to appear when she arrived during the first witness's testimony.

**¶9** Mother testified but gave erratic, nonresponsive answers and the juvenile court had to repeatedly tell her to stop or slow down. The interruptions led the court to ask Mother if she needed a recess to talk with her attorney. Mother responded, "I need to hire an attorney . . . this is not fair." The short recess that followed did not restore Mother's confidence in her appointed counsel, but the court denied Mother's informal request to substitute counsel, stating, "[w]e are set for trial today."

**¶10** The juvenile court found all five children dependent and terminated Mother's rights to her four daughters, on both alleged statutory grounds. The court found termination of Mother's parental rights to be in the daughters' best interests. Mother timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

## DISCUSSION

**¶11** Mother does not appeal either statutory termination ground. She instead argues: (1) the juvenile court violated her due process rights; (2)

termination is not in her daughters' best interests; and (3) no reasonable evidence supports the court's dependency finding. Mother also seems to argue DCS did not provide appropriate reunification services. She acknowledges her failure to object to the manner of services but argues the omission is due to the court's failure to appoint new counsel. Absent an objection challenging the manner of services, Mother has waived her right to do so for the first time on appeal. *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2014).

## I. Due Process

**¶12** Mother claims the juvenile court denied her a fair trial when it rejected her request for new counsel and limited her participation in the proceeding that occurred.

### A. Mother's Right to Counsel

**¶13** An indigent parent's right to counsel in a termination proceeding "is not co-extensive with a criminal defendant's right to counsel under the Sixth Amendment," but such a right is protected by statute (A.R.S. § 8-221) and due process. *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 260, ¶ 14 (App. 2003) (right to counsel in a termination proceeding is not of "constitutional dimension").

**¶14** In *Daniel Y.*, we noted that a criminal defendant's rights to counsel did not include "a right to counsel of his own choosing, nor to a meaningful relationship with counsel." *Id.* at 261, ¶ 20 (citing *State v. Henry*, 189 Ariz. 542, 546 (1997)). In that context, substitution is required when a "complete breakdown in communication or an irreconcilable conflict" occurs between a defendant and her appointed counsel. *See State v. Torres*, 208 Ariz. 340, 342, ¶ 6 (2004). A court must "make an inquiry on the record" if an indigent defendant presents specific factual allegations of an irreconcilable conflict with appointed counsel. *See id.* at 343, ¶¶ 7–9. We review the denial of a request for new counsel for an abuse of discretion. *See State v. Paris-Sheldon*, 214 Ariz. 500, 504, ¶ 8 (App. 2007). If the juvenile court met the Sixth Amendment's requirements in the criminal context, then it cannot be said to have violated a parent's statutory right to counsel.

**¶15** Mother did not assert any allegation of irreconcilable conflict that necessitated further inquiry. Mother's appointed counsel made her first appearance on October 25, 2021. During the December 2021 scheduling conference, Mother confirmed her desire for a trial without identifying any dissatisfaction with counsel. On the day of trial, Mother initially failed to appear, despite counsel's efforts to email and call her. Mother's tardy

entrance led to a short recess and then counsel advised the juvenile court that Mother wanted to continue with trial. Mother made her first informal request to substitute counsel while testifying. She renewed that request after the court gave her another recess. At no point did Mother offer a justification for her requests or explain her alleged conflict with counsel. Generalized complaints about counsel are insufficient to support a request for new counsel. *Torres*, 208 Ariz. at 343, ¶ 8. A defendant must make specific, factually based allegations to trigger further inquiry. *Id.* The court thus did not abuse its discretion when it denied her request without making an inquiry on the record.

## B.  Mother's Participation in the Hearing

**¶16**      Mother contends the juvenile court interfered with her participation in the termination hearing when it "effectively paused" her testimony and later required her to sit in the back of the courtroom with a security guard. Because Mother did not raise any alleged due process violations in the juvenile court, we review her allegations for fundamental error. *See Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 447, ¶ 37 (2018). Under fundamental error review, a parent must establish that (1) an error occurred, (2) the error goes to the very foundation of a case, and (3) the error was prejudicial. *Id.* at 447–48, ¶ 38. To satisfy the prejudice prong, the parent must affirmatively prove that a reasonable factfinder would have reached a different result. *Id.* at 448, ¶ 38–39.

**¶17**      The juvenile court struck many of Mother's answers as nonresponsive and then asked DCS whether it wanted to continue with Mother's testimony. DCS replied, "[Mother] can go ahead and be relieved Your Honor. I will get the testimony elsewhere." Even assuming, without deciding, the court committed an error that deprived Mother of her right to testify, nothing in the record suggests Mother suffered any prejudice. She asserts she "appeared to have defenses to the allegations," and without the court's interference "she may have been able to adequately present her case." But she does not identify specific testimony she would have given or other evidence she would have presented to discredit the State's evidence. Without Mother providing more than mere speculation, we cannot say a reasonable judge would have reached a different conclusion. *Id.* at ¶ 38 (a parent must prove prejudice beyond mere speculation).

**¶18**      The juvenile court has discretion to control the courtroom and trial proceedings, and we will not interfere with that discretion unless it results in a miscarriage of justice or deprives a parent of a fair trial. *See Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 308, ¶ 31 (App. 2007).

Mother interrupted the DCS investigator's testimony five times, and the court repeatedly instructed Mother to stop talking out of turn. The court asked a security guard to sit next to her in the back of the courtroom after she interrupted the sixth time. The court never asked or ordered Mother to leave the courtroom. We disagree that the court's order precluded Mother from participating in the hearing and conclude the court's solution fell within its discretion to facilitate the proceeding.

## II.     Best Interests

**¶19**          Even after a statutory ground is established, termination is only appropriate if the preponderance of the evidence shows termination is in the children's best interests. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018). Termination is in the children's best interests if the children will benefit from termination or will be harmed if the relationship continues. *Shawanee S.*, 234 Ariz. at 179, ¶ 20. We also look to whether the current placement is meeting the children's needs, an adoption plan is in place, and the children are adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4–5, ¶ 12 (2016).

**¶20**          DCS's case manager testified that the daughters are adoptable and in an adoptive placement with paternal aunt, and they share a strong relationship. The case manager also testified that a continuation of the parent-child relationship will be detrimental to the daughters because it will delay permanency. Mother concedes in her opening brief that the daughters' placement with paternal aunt is stable, secure, and meets their needs. The record thus supports the juvenile court's best interests finding.

## III.     Dependency

**¶21**          Because we affirm the juvenile court's termination order, we review only whether reasonable evidence supports the dependency adjudication as to Caleb. *See Rita J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 512, 515, ¶ 10 (App. 2000) (termination order renders a dependency finding moot); *see also* A.R.S. § 8-539 ("An order terminating the parent-child relationship shall divest the parent . . . of all legal rights, privileges, duties and obligations . . . .").

**¶22**          We review a dependency order for an abuse of discretion, *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015), and view the evidence in the light most favorable to sustaining the juvenile court's findings, *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 267, ¶ 6 (App. 2014).

**¶23** A dependent child includes one in need of "proper and effective parental control and who has no parent or guardian willing to exercise or capable of exercising such care and control," or if the child's home is unfit because of neglect. A.R.S. § 8-201(15)(a)(i), (iii). Neglect includes a parent's inability or unwillingness to provide her child "with supervision . . . [or] shelter if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a). DCS must prove a dependency by a preponderance of the evidence, and the juvenile court has great discretion because the primary focus is the child's best interests. *See Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005).

**¶24** Mother argues no reasonable evidence supported the juvenile court's dependency findings and the evidence shows she provided Caleb with adequate care. DCS removed Caleb the day after Mother punched paternal aunt. One week after DCS filed the dependency petition, Caleb tested positive for methamphetamine. The case manager testified Caleb may have ingested methamphetamine while Father supervised him. But the court found, and Mother agreed, that Caleb was primarily in her care. Mother testified Father only watched Caleb once, for a three-day period. Reasonable evidence thus supports a finding that Mother failed to "provide proper and effective parental care and control", and that failure created an unreasonable risk of harm to younger son.

**¶25** Reasonable evidence also supports the juvenile court's finding that Mother lacks safe and stable housing. DCS did not know of Mother's housing situation at the time of the hearing, in part because Mother refused to communicate with DCS. DCS believed Mother was either homeless or living in a shed in her father's backyard. The court thus did not abuse its discretion by finding Caleb dependent.

## CONCLUSION

**¶26** We affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA

7