NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO P.P.

No. 1 CA-JV 22-0278
FILED 6-15-2023

---

Appeal from the Superior Court in Maricopa County
No. JD39038
The Honorable Todd F. Lang, Judge

**VACATED AND REMANDED**

---

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer Blum
*Counsel for Appellee Arizona Department of Child Safety*

_____

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the court, in which Presiding Judge Jennifer M. Perkins and Judge Angela K. Paton joined.

_____

**W I L L I A M S**, Judge:

**¶1**          Jose P. ("Father") appeals the juvenile court's order terminating his parental rights. For the following reasons, we vacate and remand.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**          The Department of Child Safety ("DCS") investigated Hailey S.'s ("Mother") home well before she gave birth to Penelope (a pseudonym) in 2021. Those investigations led to the termination of Mother's parental rights to Penelope's older sibling. Less than two weeks after Penelope was born, DCS removed her from Mother's care, in part, because of (1) both parents' inability to provide for Penelope's basic needs including a lack of stable housing and history of homelessness, (2) Father's pending domestic violence charges against Mother, and (3) reports that Mother tested positive for THC at four separate prenatal visits. DCS petitioned for dependency.

**¶3**          Father was appointed counsel but never appeared at any dependency hearing and failed to participate in any reunification services offered him by DCS. Father did, however, contact DCS once or twice. The juvenile court found Penelope dependent in 2022.

**¶4**          When Penelope was nearly eight months old, the juvenile court granted DCS's request to change the case plan from family reunification to severance and adoption and allowed Father's court-appointed counsel to withdraw from representation. The next month, DCS moved to terminate Father's parental rights on grounds of abandonment and six-months in an out-of-home placement. The court did not reappoint counsel to represent Father.

**¶5**          DCS attempted to serve Father personally but could not locate him and was told by Father's brother that Father was homeless. DCS then served the termination motion through publication. DCS's publication notice identified October 25, 2022, as the date of the initial termination hearing and admonished Father of the potential consequences should he

fail to appear at that hearing, including the court proceeding in his absence and terminating his parental rights.

**¶6** Father failed to appear for the hearing. The juvenile court found that Father had been properly served, and that "having failed to appear after proper notice, [was] deemed to have waived his right to contest the allegations in the [termination] motion." The court "preserve[d] father's failure to appear" for a second hearing, scheduled for November 22, 2022, to allow DCS to present evidence in support of its termination motion. DCS, as anticipated, presented evidence at that second hearing and the court terminated Father's parental rights.

**¶7** Father timely appealed. We ordered supplemental briefing on an issue both parties touched on in their briefs—the juvenile court's failure to appoint Father counsel before terminating his parental rights.

**¶8** We have jurisdiction to consider Father's appeal under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235, 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶9** Parental rights are fundamental, but not absolute. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 97, ¶ 7 (App. 2016). When the State acts to terminate a parent's rights, it must provide that parent with due process. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 355 (App. 1994). We review *de novo* issues of due process. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442, ¶ 15 (2018).

**¶10** Indigent parents have a right to court-appointed counsel in parental termination proceedings under A.R.S. § 8–221(B); by rule, Arizona Rule of Juvenile Procedure 303(b); and as a matter of due process, *Daniel Y. v. Ariz. Dep't. of Econ. Sec.*, 206 Ariz. 257, 260, ¶ 14 (App. 2003). Section 8–221(B) mandates that, for dependency and termination proceedings, "[i]f a parent . . . is found to be indigent and entitled to counsel, the juvenile court shall appoint an attorney to represent the person *unless* the person knowingly, intelligently and voluntarily waives counsel." (Emphasis added).

**¶11** At the beginning of the dependency, the juvenile court appointed Father counsel, seemingly based, in part, upon DCS's allegation that Father's "history of homelessness" prevented him from providing for Penelope's "basic needs, such as . . . shelter." DCS's report to the court, which was dated just two days after filing the dependency petition and

prepared for the initial dependency hearing, stated that Father was "homeless," residing at the Phoenix Rescue Mission, and had "no earnable income." Though the court never made an express finding of Father's indigency, it impliedly—and appropriately—did so when it appointed counsel. *See Mary Lou C. v. Ariz. Dep't. of Econ. Sec.*, 207 Ariz. 43, 50, ¶ 17 (App. 2004) ("If the juvenile court fails to expressly make a necessary finding, we may examine the record to determine whether the facts support that implicit finding.").

**¶12** The juvenile court thereafter never required more of Father to prove indigency. And additional record evidence suggests that Father's indigent status never changed. For example, when DCS attempted to serve Father the termination motion at an address it had for him, Father's brother spoke to the process server stating that Father did not live there and was homeless. An affidavit of nonservice to that effect was submitted to the court. No party ever challenged Father's indigency throughout either the dependency or termination proceedings. The court's appointment of counsel for Father was entirely proper.

**¶13** It is true that Father's participation here was minimal, at best. Though Father contacted DCS on one or two occasions, he never communicated with counsel, never attended any court hearing, and never engaged in DCS offered services. Regardless of Father's lackluster involvement, however, as an indigent parent his right to counsel was not contingent upon his efforts to reunify with Penelope.

**¶14** And though Father was provided notice of the possible consequences of failing to appear for the initial termination hearing, including terminating his parental rights, Father was not—nor should he have been—notified that his failure to appear at a scheduled hearing could result in waiving his right to court-appointed counsel. *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 211, ¶ 20 (App. 2008) ("[A] parent's non-appearance cannot constitute a constructive waiver of any rights that the parent has not been specifically informed he or she could lose by failing to appear.") (as corrected).

**¶15** Because Father was indigent, he was entitled to court-appointed counsel before having his parental rights terminated. Father never knowingly, intelligently, and voluntarily waived that right. Consequently, Father's due process rights were violated when his parental rights were terminated without representation. Accordingly, we reverse the termination order and remand for further proceedings consistent with this

decision. Father's challenge of the adequacy of notice for the November 22, 2022, hearing is moot.

## CONCLUSION

¶16      For the foregoing reasons, we vacate and remand.



AMY M. WOOD • Clerk of the Court
FILED:   AA