NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO S.F.

No. 1 CA-JV 23-0157
FILED 4-18-2024

---

Appeal from the Superior Court in Maricopa County
No. JS520346
The Honorable Keelan S. Bodow, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant David F.*

Guymon Law Offices, Chandler
By Ian D. Haney, Amber L. Guymon
*Counsel for Appellee Ashley R.*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

**¶1**        This is an appeal of a private severance action. David F. ("Father") appeals the termination of his parental rights to his child ("S.F."). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Father and Ashley R. ("Mother") are the biological parents of S.F., born in August 2016. In April 2022, Mother petitioned to terminate the parent-child relationship between Father and S.F. Mother alleged Father had abandoned S.F., *see* Ariz. Rev. Stat. ("A.R.S.") §§ 8-531(1), -533(B)(1), and that termination was in S.F.'s best interests because it would provide S.F. with stability and permanency.

**¶3**        The next month, Father moved *in propria persona* to dismiss Mother's petition. He did not appear at the initial severance hearing in July 2022. The superior court appointed Father counsel and stated that he "is free to hire an attorney of his own if he is able to afford one."[1] The court then continued the initial severance hearing to August 2022.

**¶4**        After the court appointed counsel, Father filed *in propria persona* a notice of conditional acceptance of legal counsel. Father's notice demanded, inter alia, that his court-appointed counsel and S.F.'s court-appointed counsel "follow [his] lead on all matters"; "pledge [their] alliance and loyalty to [him], not to the B.A.R. or the Court"; and "prove that [Father] is a 13th and 14th amendment corporate citizen, and not a natural born of the Republic."

**¶5**        Father did not appear at the continued severance hearings in August or September 2022. In late August, Father filed *in propria persona* a writ of quo warranto by affidavit, demanding that all case-related judicial officers and legal counsel present to him their professional credentials within 72 hours.

---

[1] The court's Notice of Appointment warned Father:

> Failure to contact your attorney within thirty days of the date of this Notice may result in the Court discharging the attorney and may cause no attorney to be appointed in the future. In addition, failure to stay in contact with your attorney may be considered a lack of interest by you and may cause your attorney to be discharged by the Court.

**¶6**            Father appeared for the first time at the continued severance hearing in November 2022.  The court read to Father Form IV (Notice to Parent in Termination Action), advising him in part:

> You are required to appear for every hearing the court sets, including a pre-trial conference, a settlement conference, and the adjudication hearing.  If you don't show up for a court date and you don't have a good reason for not showing up, the court may find you have waived your rights in this case and you have admitted the allegations in the motion or petition.  The court may then consider evidence in your absence, terminate your parental rights, and place the child for adoption.

**¶7**            The court found Father indigent, reaffirmed the appointment of counsel to represent him, and appointed him a guardian ad litem ("GAL").

**¶8**            At the December continued severance hearing, the court denied Father's counsel's oral motion to withdraw.  Father then orally requested new counsel, and the court directed him to file a written request.  Father did not file a new counsel request; instead, he filed *in propria persona* another request to dismiss Mother's petition, asserting that Mother and the court had failed to address his pending requests, including his "[e]xpedited" motion to dismiss, notice of conditions, and writ of quo warranto.

**¶9**            The court denied Father's motions at the January 2023 pre-trial conference and noted that his notice of conditional acceptance and writ of quo warranto "were not motions permitted by rule or statute for termination of parental rights matters, were not filed in accordance with the juvenile rules, and did not refer to any relevant statutes or rules as applied to this matter."  At that time, Father's appointed counsel advised the court that she could not accept Father's conditions.  The next day, Father filed an "amended" notice of conditional acceptance, again asserting, inter alia, that all case-related counsel must follow his lead on all matters, pledge to him their alliance and loyalty, and prove that he is a 13th and 14th Amendment corporate citizen.

**¶10**            Father's appointed counsel then filed a written motion to withdraw, stating, "Irreconcilable conflicts have arisen which preclude further effective representation and impair undersigned counsel's ability to effectively represent the Father."

3

¶11          The court found Father's conditions for representation "have no valid legal basis and are improper" and that "[t]here is no attorney who can legally submit to Father's conditions as written." The court stated that Father could hire his own attorney, or he "can choose to proceed with a court-appointed lawyer who follows the law and not Father's conditions as written." The court also stated that Father could alternatively proceed without an attorney and represent himself, and that if he "continues to insist that Counsel follow his conditions as written, Father will effectively be choosing to represent himself." The court then ordered Father to indicate if he would proceed with represented counsel or be representing himself on or before the February 2023 in-person hearing.

¶12          Father responded *in propria persona*, stating that he "continues to stand by [his] previously stated and unchanged position" regarding his conditions. He argued he had "been awaiting the appointment of new counsel(s) who must meet [his] current/upcoming Revised Notice of Conditional Acceptance" and that he could neither represent himself nor afford an attorney. He asserted the court and all counsel must accept his conditions "point by point."

¶13          Father appeared telephonically at the February 2023 hearing, despite the court's order for in-person attendance. The court granted appointed counsel's motion to withdraw and appointed advisory counsel for Father. The court ordered Father "shall advise advisory counsel if he chooses his advisory counsel to be re-appointed his attorney no later than [April 1]." The court also stated:

> Father states he would like an attorney, but states he will only work with the attorney if they follow his conditions in his previously filed pleading. The Court explains again that his requirements are not consistent with the law, and that by requiring his "conditions" and refusing to work with an attorney unless the "conditions" are met, he is effectively choosing to work without a court appointed attorney.

¶14          The court advised Father, "[I]f you don't appear in the future, again as we described in the Form IV that was read to you at the beginning of the case, we could proceed in your absence."

¶15          Father did not file any notice regarding court-appointed counsel before April 1. But in early May, he filed, *in propria persona*, a "revised" conditions request.

¶16        The court reset the final severance hearing for early May 2023, ordering that the "hearing shall be conducted in-person." Because advisory counsel had a conflict, the court issued a minute entry rescheduling the hearing for a later date in May.

¶17        Father appeared telephonically at the rescheduled termination adjudication hearing. He claimed he could not appear in person because he had no notice of the rescheduled date. His advisory counsel confirmed she had forwarded the continuance minute entry to the email address Father had been using to communicate with her. When Father argued that email was insufficient service, the court stated that a scheduling minute entry was "not service of process" but an "order of the [c]ourt" and found advisory counsel's email to Father was an appropriate method to communicate the new date. In response, Father asserted, "She's not my attorney," noting that he had not "accepted her."

¶18        The court proceeded with the hearing despite Father's telephonic appearance. The court found that Father is "effectively responsible for representing [him]self" with advisory counsel available. The court also stated Father's "failure to appear in person is something that the Court can consider in ultimately making a ruling in this case." Soon after, Father "hung up or was disconnected" from the hearing and did not attempt to call back.

¶19        Father's advisory counsel and his GAL moved to withdraw, stating Father would not accept their counsel or services. The court denied both requests, finding Father "has significant difficulty understanding and communicating," and because of those traits, it was important he be represented.

¶20        After hearing Mother's evidence and testimony, the court found Mother proved by clear and convincing evidence that Father had abandoned S.F. and proved by a preponderance of the evidence that termination was in S.F.'s best interests. Father timely appealed, arguing lack of proper legal representation, violation of due process, denial of his conditional acceptance requests, and failure to include him in the proceedings. We have jurisdiction under A.R.S. §§ 8-235(A) and 12-2101(A)(1).

## DISCUSSION

¶21        Father does not challenge the superior court's underlying factual findings or legal conclusions in its order terminating Father's parental rights. He only argues that the superior court deprived him of a

right to representation and to be noticed for the rescheduled hearing, and thus violated his due process rights. "Whether due process has been satisfied is a question of law that we decide *de novo*." *State ex rel. Dep't of Econ. Sec. v. Torres*, 245 Ariz. 554, 560, ¶ 23 (App. 2018) (citation omitted).

I.      Appointment of Counsel

**¶22**      An indigent parent has a right to court-appointed counsel in a parental termination proceeding under statute, A.R.S. § 8-221(A)-(B), and as a matter of due process, *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 307, ¶ 28 (App. 2007). *See also* Ariz. R.P. Juv. Ct. 303(b).

**¶23**      Relying on *Daniel Y. v. Arizona Department of Economic Security*, 206 Ariz. 257 (App. 2003), Father argues the court's finding that he waived his right to counsel was error because he was not advised of the consequences of representing himself. In *Daniel Y.*, this court held that a waiver of counsel cannot be "easily presumed" and that before finding an indigent parent has waived his right to counsel, "Arizona law requires that he be advised of 'the dangers of self-representation, and the difficulties involved in defending oneself without formal legal training.'" *Id.* at 260-61, ¶ 15 (citations omitted).

**¶24**      In *Daniel Y.*, the superior court terminated the father's parental rights without providing appointed counsel when the father "made no unequivocal request to represent himself and did not knowingly or voluntarily waive, or otherwise forfeit, his right to counsel." *Id.* at 263, ¶ 26. The superior court allowed three attorneys—two court-appointed— to withdraw based on "strategic" and "irreconcilable" differences. *Id.* at 258–59, ¶¶ 5–6. Two weeks before the termination adjudication hearing, the court granted the most recently appointed counsel's withdrawal request after an ex parte, in camera hearing. *Id.* at 259, ¶ 6. The court declined to appoint substitute counsel for the father, referencing an earlier minute entry that warned the father that it "would find it very difficult to grant any other motion to withdraw filed by an attorney or request for a new attorney filed by [the father]." *Id.* At the termination adjudication hearing, the court asked whether the father was ready to proceed, and he stated that he did not know how to respond without counsel. *Id.* at ¶ 7. The court nevertheless proceeded with the hearing and terminated the father's parental rights. *Id.* at 259–60, ¶¶ 7, 10.

**¶25**      This case is distinguishable from *Daniel Y.*—Father had access to representation throughout the proceedings. Rather than inform the court whether he wanted to proceed with his appointed counsel, Father

continuously filed conditional notices *pro per*. And when offered the opportunity for new counsel, Father ignored the court's acceptance deadline and reasserted his conditions, which the court rightfully found improper and contrary to law. Even after Father disengaged from the termination adjudication hearing, the court denied the requests of advisory counsel and the GAL to be relieved.

**¶26** The court repeatedly warned Father that his conditions for representation were contrary to law and that it could not require an appointed counsel to meet Father's "improper" conditions. And, unlike *Daniel Y.*, the court cautioned Father that if he "continues to insist that Counsel follow his conditions as written, Father will effectively be choosing to represent himself," and gave him at least two opportunities to indicate whether he would accept the court's offered counsel.

**¶27** The court also warned Father that, based on his conduct, the court could find that he was representing himself. "[P]ersistent disruptive or dilatory conduct by a [party] will support a determination that the [party] 'waived' his right to counsel. Such a waiver by conduct can occur only after a court both warns the [party] that further disruptive conduct may result in the loss of the right to counsel and explains the implications of such a waiver." *State v. Hampton*, 208 Ariz. 241, 244, ¶ 7 (2004) (citations omitted); *accord Tammy M. v. Dep't of Child Safety*, 242 Ariz. 457, 461, ¶ 17 (App. 2017) (citing *Hampton*). On this record, the court did not deprive Father of his right to representation.

II.    Hearing Notice

**¶28** Father also argues that the court erred in allowing Mother to proceed on her termination petition in Father's absence, asserting the court failed to provide him with notice of the rescheduled termination adjudication hearing. But Father was present telephonically at the beginning of the hearing, and he otherwise offers no facts challenging advisory counsel's avowal that she sent notice of the changed date to the email address Father used to communicate with her.

**¶29** If a parent fails to appear without good cause, the court may proceed with the termination hearing, but only if it finds that the parent:

> (A) had notice of the termination adjudication hearing; (B) was properly served pursuant to Rule 351; and (C) had been admonished regarding the consequences of failing to appear at the termination adjudication hearing, including a warning that the hearing could go forward in the parent's absence and

that failing to appear may constitute a waiver of rights and an admission to the allegations contained in the termination petition or motion.

Ariz. R.P. Juv. Ct. 353(f)(1).

**¶30**        The court repeatedly notified Father that the hearing could proceed in his absence if he did not appear.  Father fails to explain his failure to attend the hearing in person or to rejoin the termination adjudication hearing telephonically.  "The [superior] court has discretion to control the courtroom and trial proceedings." *Christy A.*, 217 Ariz. at 308, ¶ 31 (citation omitted).  "We will not interfere in matters within the [superior] court's discretion unless we are persuaded that the exercise of such discretion resulted in a miscarriage of justice or deprived one of the litigants of a fair trial." *Id.* (quoting *O'Rielly Motor Co. v. Rich*, 3 Ariz. App. 21, 27 (1966)).

**¶31**        Father received proper hearing notice, and the court did not err when it held the termination adjudication hearing in his absence.

## CONCLUSION

**¶32**        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA